860 So.2d 332 (2003)
ESTATE OF Eugenia W. CARTER, Appellant,
v.
PHILLIPS AND PHILLIPS CONSTRUCTION COMPANY, INC., Appellee.
No. 2002-CA-01243-COA.
Court of Appeals of Mississippi.
November 25, 2003.
*333 Orbie S. Craft, Brandon, attorney for appellant.
David M. Sessums, Vicksburg, attorney for appellee.
MYERS, J., for the Court.
¶ 1. Eugenia Carter was injured in a motor vehicle accident. Her estate asserts the accident was the result of negligence by Phillips and Phillips Construction Company, which was performing upkeep on the right of way of Highway 18 in Rankin County. Carter died before trial, and the suit was revived by her estate. After a trial in the Circuit Court of Rankin County, a jury returned a verdict for Phillips and Phillips. Carter's estate appeals, asserting two issues:
I. DID THE COURT ERR IN FAILING TO SUSTAIN APPELLANT'S EVIDENTIARY OBJECTIONS?
II. DID THE COURT ERR IN ENTERING JUDGMENT FOR APPELLEE AND IN FAILING TO GRANT APPELLANT A NEW TRIAL?

Facts
¶ 2. Eugenia Carter was traveling in the southbound lane of Highway 18 south of *334 Brandon, Mississippi. She intended to make a left turn onto her driveway (known as Carter Place or Carter Road). Phillips and Phillips Construction Company (Phillips & Phillips) was performing upkeep on the right of way along Highway 18. On the day of the collision, Phillips & Phillips had set up a construction zone in the vicinity of Carter Place. Traffic was restricted to one lane while in the construction zone. A flagman was placed at each end of the construction zone.
¶ 3. Robert Burton, an officer with the Mississippi Highway Patrol, was traveling south on Highway 18 while responding to an emergency call. He came upon the construction zone, and was stopped by the flagman. The flagman flagged Burton into the northbound lane. Burton did so. When Burton arrived at the intersection with Carter Place, Carter turned left in front of him, and they collided, resulting in injury to Carter.

Legal Analysis

I. DID THE COURT ERR IN FAILING TO SUSTAIN APPELLANT'S EVIDENTIARY OBJECTIONS?
¶ 4. This issue contests the admissibility of various pieces of evidence. We use an abuse of discretion standard when reviewing a trial court's decision concerning the admissibility of evidence. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss.2002).

A. Hearsay Evidence
¶ 5. Carter's estate contends that the trial judge improperly allowed hearsay evidence from Officer Cecile Kazery of the Mississippi Department of Public Safety. As defined by Mississippi Rule of Evidence 801(c), "`[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The trial judge warned Kazery that she could not relate what people had told her, but she could testify to the results of her investigation. Such an instruction would properly warn the witness against hearsay testimony. Cf. Tanner v. State, 764 So.2d 385, 406(¶ 67) (Miss.2000) (detective's testimony of results of investigation was not hearsay). In several of the instances where the estate objected to hearsay testimony it is apparent that Kazery was testifying to her conclusions, rather than to any out of court statement. For example, she was asked about a diagram she prepared as part of her investigation. The defense inquired where the flagmen were on the diagram. The estate objected. We hold that this was not hearsay, and that she was testifying to her conclusions.
¶ 6. On the other hand, Kazery was also asked, "In you conversation with the flagmen, what were you advised and what did you ask?" The estate was granted a continuing objection to hearsay at this point. Kazery then began to testify as to what one of the flagmen had told her he witnessed. This is clearly hearsay. This occurred several times during her testimony. For example:
Q: Did you ask Officer Burton about flagmen being there?
A: Yes, sir, he said the flagmen had held the traffic for him and told him to go on ahead on.
...
Q: And in talking with [the workers], what were you advised?
A: Some of them didn't see anything. In the statements, that's what was written, that they were not close, did not see anything, and signed.
...
Q: And Officer Burton, we're talking about, he was the officer that was involved in the accident; is that correct?
A: Yes, sir.

*335 Q: And you asked him about a flagman?
A: Yes, sir.
Q: What was his response?
A: He said that he had slowed down. I believe he told me he even rolled the window down to make sure....
¶ 7. These statements were all Kazery's relating what she had been told out of court, the textbook example of hearsay. They do not fall within any hearsay exceptions. On a close call, we would have to give the trial judge the benefit of the doubt, but we find that it was obvious that these statements were offered for the truth of the matter asserted. Therefore, we hold that allowing these statements over the estate's objections was an abuse of discretion.

B. The relevance of Kazery's testimony
¶ 8. The estate argues that Kazery's testimony regarding her investigation was irrelevant. We disagree.
¶ 9. Mississippi Rule of Evidence 402 declares that all relevant evidence is generally admissible. Rule 401 defines relevant evidence as any evidence having the tendency to make the existence of any fact of consequence more probable or less probable. Kazery was asked about her investigation into the accident and about the construction area where the accident occurred. For example, she was asked about a diagram she prepared of the scene, about the number of flagmen present, and from which lane Mrs. Carter would have been turning. This information definitely would allow the jury to find the existence of material facts more or less probable, and was therefore relevant under Rule 402.

C. Opinion Evidence by a Lay Witness
¶ 10. The estate raises an argument that Kazery lacked personal knowledge of the events concerning the accident and, since she was not qualified as an expert, could not give opinion testimony. The estate is correct that Mississippi Rule of Evidence 602 requires a witness, unless qualified as an expert under Rule 702, to have personal knowledge of the facts to which he testifies. The estate is also correct in asserting that Kazery was not qualified as an expert and her testimony was not admitted as expert testimony.
¶ 11. Before Kazery testified, the estate raised a motion seeking to prohibit her from testifying as to the cause of the accident. The trial court granted the motion, stating:
Here's the ruling of the court. If she's called as an accident investigator, she can go through her entire investigation. She can't offer a conclusion as to fault because she's not being called as an expert reconstructionist.... And she can testify to everything she saw in her investigation, the conditions that were there, everything that happened. She just can't offer her final opinion as to whose fault it was.
(emphasis added).
¶ 12. Phillips & Phillips counters the estate's argument by citing Lynch v. Suthoff, 220 So.2d 593, 596 (Miss.1969), overruled by Hollingsworth v. Bovaird Supply Co., 465 So.2d 311 (Miss.1985), for the proposition that it is entirely proper for an investigating officer to testify as to what he saw at the accident scene. That is certainly true, but that is not what Kazery did in this case. Her testimony was peppered with comments on what the scene was like at the time of the accident. She left the bounds of the trial judge's ruling by testifying about what she did not see and of which she did not have personal knowledge. For example, she testified that there were two flagmen present, one on each end of the construction zone. *336 Kazery then testified to what she had been told happened. Not only is this hearsay, as we discussed earlier, but it shows that her testimony was not based on personal knowledge. Mississippi Rule of Evidence 602 clearly indicates that the only witness who may testify to facts not within their personal knowledge is an expert witness. Since Kazery was not qualified as an expert witness, it was error to allow her to testify as to events of which she had no personal knowledge.

II. DID THE COURT ERR IN ENTERING JUDGMENT FOR APPELLEE AND IN FAILING TO GRANT APPELLANT A NEW TRIAL?
¶ 13. We use the abuse of discretion standard of review for the denial of a motion for a new trial in civil cases. When a motion for a new trial is made, the trial judge must view all credible evidence in the light most favorable to the non-moving party. All evidence supporting the claims or defenses of the non-moving party should be taken as true. Only where, upon review, allowing the verdict to stand would result in a miscarriage of justice should the motion be granted. Dorrough v. Wilkes, 817 So.2d 567, 573(¶ 22) (Miss. 2002).
¶ 14. The first witness called was Officer Robert Burton. He testified that he saw a flagman make a motion that would indicate to him that the flagman wanted Mrs. Carter to turn. He testified he saw at least one other flagman inside the construction zone.[1] Burton was using his siren and warning lights at the time of the accident.
¶ 15. Mrs. Eugenia Carter, the victim of the accident, died before the trial.[2] Her video deposition was played for the jury and the transcript of the deposition was entered into evidence. She testified that she had come to a stop at her driveway, which had been given the 911 Address of Carter Place.[3] There was a flagman at that location, and he flagged her to make the left turn into her driveway. She testified that it was her opinion that the flagman would not have signaled her to turn if it had not been safe for her to turn. She also testified that she had been diagnosed with some hearing loss, but was never prescribed a hearing aid to compensate for that loss.
¶ 16. The defense then presented the testimony of James Mathis, the construction crew foreman. He described the standard procedure for setting up a construction zone each morning. According to Mathis, there were only two flagmen on the crewone at each end of the construction zone.
¶ 17. Next to testify was Joe Altman, a logger working for Phillips & Phillips on the day of the accident. He was working in the vicinity of Carter Road. He testified that he saw Carter preparing to make a turn and he saw Trooper Burton approaching with his warning lights and siren on. Altman attempted to flag Burton to stop, using only his hands, but to no avail.
¶ 18. Next to testify was Officer Kazery. Her testimony consisted of what she learned through her investigation of the accident scene.
¶ 19. Viewing the evidence in the light most favorable to Phillips & Phillips, it *337 would appear that the "mystery" third flagman Trooper Burton saw was actually Altman warning him to stop. This appears to be the same conclusion the jury reached by coming to the verdict it returned. As such, the trial judge was correct in allowing the verdict to stand and in denying the motion for a new trial.

Conclusion
¶ 20. Based on the evidence the jury heard, the trial judge made the correct ruling on Carter's motion for a new trial. However, the jury heard evidence in Kazery's testimony that should have been excluded since it was either hearsay or outside the limits of lay testimony. We therefore reverse and remand this case for a new trial consistent with our findings.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, P.J., BRIDGES, THOMAS, AND CHANDLER, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., AND IRVING, J. McMILLIN, C.J., CONCURS IN RESULT ONLY. LEE, J., NOT PARTICIPATING.
GRIFFIS, J., dissenting.
¶ 22. I respectfully disagree with the majority's finding that it was reversible error to admit Officer Kazery's testimony. Therefore, I dissent.
¶ 23. Officer Kazery did not offer an opinion as to the how the accident occurred or who was at fault. Instead, she testified to what the scene was like at the time of the accident. The specific questions that were objected to relate to the number and position of the flagmen.
¶ 24. The majority correctly finds that the admission of Officer Kazery's testimony was hearsay not falling within any exception. However, I disagree with the majority's conclusion that it was an abuse of discretion to allow this testimony requiring a reversal of this case. Instead, I find the admission of such evidence to be harmless error because the same testimony had been introduced through the testimony of Joe Altman, Charlie Mathis, and Linda Gail Jones. Therefore, Carter was not prejudiced by the admission of this testimony.
¶ 25. "For a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." Terrain Enters., Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995). "Error is reversible only where it is of such magnitude as to leave no doubt that the appellant was unduly prejudiced." Holladay v. Holladay, 776 So.2d 662, 672(¶ 40) (Miss.2000).
¶ 26. Joe Altman was a logger working at the site and an eyewitness to the accident. He testified that there were two flagmen posted in the construction area. Charlie Mathis testified that there were two flagmen, one on each end. Linda Gail Jones was several cars behind Mrs. Carter and she testified that she only saw the first flagman who signaled her through.
¶ 27. In Tanner v. State, 764 So.2d 385, 406-07 (¶¶ 69-70) (Miss.2000), the Mississippi Supreme Court held that inadmissible hearsay testimony was harmless error since admissible testimony similar in nature was already introduced. Specifically, the court found:
The prosecution asked Detective McCann on direct examination:

*338 Q: That night, that is, the night y'all first began to treat it as a homicide. Do you know whether Detective McCann spoke with any neighborhood people?
A: He did. He spoke with the persons in the neighborhood who were standing out in front of the house and he came back in and he said that something struck him as strange.
When Tanner objected based on hearsay grounds, the trial court stated, "try to avoid hearsay." Although it did not per se sustain the objection, the trial court's language implied such. The information received from the testimony above had already been introduced through Detective McCann's testimony of what he said that night. Consequently, Tanner was not prejudiced by the admission of this hearsay. While this Court agrees the above testimony is inadmissible hearsay, we find such error to be harmless.
¶ 28. Likewise, in this case, I agree with the majority that the Officer Kazery's testimony was inadmissible hearsay. Because of the similar testimony from Altman, Mathis, and Jones, I find such error to be harmless and would affirm the trial court.
SOUTHWICK, P.J., AND IRVING, J., JOIN THIS SEPARATE OPINION.
NOTES
[1] However, in an earlier deposition taken a year after the accident, Burton stated that he did not remember another flagman.
[2] Mrs. Carter's death was not related to the accident.
[3] At other places in the trial, Carter Place is identified as Carter Drive, but all parties agreed that the reference was to Mrs. Carter's driveway.