GRIFFIS, J.,
for the court.
¶ 1. Carl Eley was found guilty of armed robbery and sentenced to twenty-five years in the custody of the Mississippi Department of Corrections. On appeal, Eley argues that: (1) his motion in limine to prohibit Mark Bannister from testifying was improperly denied, and (2) the trial court erred when it denied his motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, his motion for a new trial, because a juror, Ronald Keith Cash, failed to respond truthfully to relevant, direct, and unambiguous questions during voir dire. We find no error and affirm.
FACTS

1. The Crime

¶ 2. James Stone, the victim, and Bannister were installing vinyl siding on a home on Cox Street in Jackson, Mississippi. While they were working, Eley came by several times and made conversation with them. When the two men were packing up to leave for the day, Eley came back to the house with a friend, allegedly Eric Stringer. Eley followed Stone inside the house and robbed him at gunpoint. Stringer was outside with Bannister during the robbery. After Stone gave Eley $42, Eley and Stringer left the scene.
¶ 3. Stone went outside and told Bannister what had happened, and they drove to a nearby parking lot to call authorities and their supervisor. Bannister and the supervisor rode around the neighborhood looking for the suspects. Bannister saw Stringer at a convenience store and called the police. Bannister and Stone identified Stringer as the friend of the man who had robbed Stone. A month later, police received a tip that Eley was the gunman. Stone positively identified Eley as the man who had robbed him, but Bannister could not make an identification.

2. Juror Ronald Keith Cash

¶4. During voir dire, the trial judge read the names of all witnesses, including Detective David Domino, and asked if any of the jurors knew them. The first alleged omission occurred when Cash did not indicate that he knew Detective Domino. After testifying, Detective Domino recognized Cash. He and Cash met only once, one year and eight months before this trial, when Cash was the victim of an armed robbery that Detective Domino was investigating. The following day, Detective Domino called the State to notify them, but the trial was over. The next morning, the trial judge held a post-trial hearing to discuss the matter.
¶ 5. The second alleged omission concerns the armed robbery that Detective Domino investigated. During voir dire, the trial judge asked if there was anyone who for a religious reason or moral reason could not sit in judgment of another human being, and the State asked if anyone for religious reasons or other reasons felt they could not sit in a criminal case and judge another person’s guilt or innocence.
¶ 6. At this time, two potential jurors said they did not think they could be fair in this type of case because each had a loved one who was shot during an armed robbery. Cash never indicated that there was any reason why he could not sit in this criminal case. After Detective Domino came forward and said he recognized Cash, it came to light that Cash was the victim of an armed robbery.
*127 ¶ 7. Lastly, the State also asked if any of the potential jurors had been booked into jail. Cash said he had a DUI ten years ago. The State asked if that was all, and he said yes. After voir dire, the State asked that Cash stay to be interviewed in private. After asking him about the DUI, the State asked him if there was anything else. Cash responded:
A: I have been before sir, on something else, but I was told since it was [non-]adjudicated that, you know I did not have — you know, it was not on my record and I did not have to disclose it.
Q: You were indicted in '05 for possession of cocaine?
A: Yes, sir.
Based on Cash’s failure to be forthcoming about his arrest for cocaine possession, the State challenged him for cause as not being truthful during voir dire.
¶ 8. Eley’s counsel forcefully argued that Cash should not be excused. He explained that he tells his clients that once they complete their non-adjudication, if asked about a criminal charge, then they can say no. Eley’s counsel went on to say that he thought this was a mistake and that Cash was not trying to hide anything and was not being intentionally dishonest. The trial judge found that there could have been confusion and did not dismiss Cash for cause.
ANALYSIS

I. Was Eley’s motion in limine to prohibit Mark Bannister from testifying improperly denied?

¶ 9. Eley claims that Bannister should not have been allowed to testify because he did not have personal knowledge of the critical event, the armed robbery, and his testimony was irrelevant, confusing, and misleading. The State argues that Bannister had personal knowledge, because he was with the victim and gunman immediately before and after the robbery. The trial court overruled Eley’s motion in limine and allowed Bannister to testify about what he saw.
¶ 10. The standard of review for a trial judge’s decision to admit or exclude evidence is abuse of discretion. Graves v. State, 492 So.2d 562, 565 (Miss.1986).
¶ 11. Under Mississippi Rule of Evidence 602, a witness must have “personal knowledge of the matter” unless they are testifying as an expert. “[A] person can testify to facts within his knowledge, gained through any of his senses.” Perkins v. State, 290 So.2d 597, 599 (Miss.1974) (citing Dennis v. Prisock, 221 So.2d 706, 710 (Miss.1969)). Eley argues that Bannister lacked the required personal knowledge because he did not actually see the armed robbery occur. While it is true that Bannister did not see the robbery occur, he did see the gunman when the gunman stopped to talk to him and Stone immediately before the robbery occurred.
¶ 12. Based on his personal knowledge, Bannister described the gunman as five-foot five-inches tall, approximately twenty years old, and wearing a do-rag. While Bannister could not identify Eley in a lineup, his description matched Stone’s description of the gunman — five-foot four-inches tall and wearing a do-rag. Bannister also explained that after the robbery, he and Stone drove to a nearby restaurant because they were afraid that the men were still in the area and lived close by.
¶ 13. Eley cites Estate of Carter v. Phillips and Phillips Constr. Co., 860 So.2d 332 (Miss.Ct.App.2003) as grounds for reversal when a non-expert witness is allowed to testify when they were not present at the accident. However, in Estate of Carter, the investigating police offi *128 cer was not present when the accident occurred, and her testimony was found to be “either hearsay or outside the limits of lay testimony.” Id. at 337(1120). Here, Bannister testified about what he saw, not about what someone else told him they saw.
¶ 14. Bannister saw the man who had robbed Stone and gave an accurate description of him, which matched the description given by Stone. However, he was unable, a month later, to pick the man out of a lineup. There is nothing confusing or misleading about Bannister’s testimony. The trial judge did not abuse his discretion by allowing Bannister to testify about what he saw and did before, during, and after the robbery. This issue is without merit.

II. Did the trial court err when it denied Eley’s motion for a JNOV or, alternatively, his motion for a new trial, because a juror, Cash, failed to respond truthfully to relevant, direct, and unambiguous questions during voir dire?

¶ 15. Eley argues that the trial court failed to follow the test outlined in Odom v. State, 355 So.2d 1381, 1383 (Miss.1978), because it did not infer prejudice to the defendant when a potential juror allegedly failed to respond truthfully to relevant, direct, and unambiguous questions during voir dire. The State contends that Eley did not prove that Cash failed to respond truthfully to relevant, direct, and unambiguous questions during voir dire.
¶ 16. Where a prospective juror fails to respond to a question during voir dire, upon motion for a new trial, the trial court should determine whether the question was: “(1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited.” Id. If so, “the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror’s failure to respond.” Id. If prejudice could reasonably be inferred, then the trial court shall order a new trial. Id. A trial court’s judgment about whether a jury is fair and impartial will not be disturbed unless it appears clearly that it is wrong. Id.
¶ 17. Eley contends that Cash failed to respond truthfully about whether: (a) he knew Detective Domino, (b) there was any reason that he could not be fair and impartial, and (c) he had been arrested for cocaine possession.

A. Did Cash fail to respond truthfully about whether he knew Detective Domino?

¶ 18. During voir dire, the trial judge asked if any of the prospective jurors knew the State’s witness, Detective Domino, and Cash did not respond. After testifying, Detective Domino recognized Cash as the victim of an armed robbery that he had previously investigated. The trial judge’s question satisfies the first two requirements of Odom; it was relevant to the voir dire examination and unambiguous. However, the trial court found that Cash did not have substantial knowledge of the information sought to be elicited.
¶ 19. Detective Domino interviewed Cash once, one year and eight months prior to this trial. This one encounter is the extent of their interaction and relationship. As a detective, Detective Domino is trained to be observant. It is not surprising that he remembers faces and details that others may forget. Detective Domino recognized Cash, but that does not mean that Cash recognized Detective Domino.
¶ 20. Because there is no evidence that Cash ever recognized Detective Domino from their one encounter, Eley’s allegation *129 is mere speculation. We affirm the trial judge’s finding that Cash lacked substantial knowledge of the information sought. We find no merit to this issue.

B. Did Cash fail to respond truthfully about tuhether there was any reason that he could not be fair and impartial?

¶ 21. Eley asks this Court to grant him a new trial based on Cash’s failure to mention that he was the victim of an armed robbery. This Court will only reach the test from Odom if the prospective juror in a criminal case “fail[ed] to respond to a relevant, direct, and unambiguous question.” Odom, 355 So.2d at 1383.
¶ 22. In his brief, Eley relies on Atkinson v. State, 371 So.2d 869 (Miss.1979) in support of his argument for a new trial. In Atkinson, potential jurors were asked, “[h]as any member of your family died as the result of an automobile accident,” and a juror failed to disclose that she had two close family members die in automobile accidents. Id. at 870. The supreme court granted Atkinson a new trial because the juror failed to respond truthfully to this direct and unambiguous question. Id.
¶ 23. Here, there were general discussions about the importance of fair and impartial jurors, and the potential jurors were asked if anyone had a religious reason or moral reason that they could not sit in judgment of another human being. However, no one ever asked the potential jurors if they had been a victim of a crime. Eley’s counsel chose not to ask the potential jurors specifically if they had been victims of a crime, and Eley now claims that Cash lied about being a victim of an armed robbery based on general discussions about fairness and questions about religious and moral conflicts.
¶ 24. Counsel cannot ask general questions and then after an unfavorable verdict, claim a potential juror was not truthful. This issue has no merit because the questions were not direct and unambiguous.

C. Did Cash fail to respond truthfully about whether he had been arrested for cocaine possession?

¶25. Lastly, we address Eley’s claim that Cash failed to respond truthfully about his prior arrest for the possession of cocaine. Eley claims that Cash withheld information about his previous cocaine possession charge. The State claims this issue was waived.
¶ 26. The supreme court has held that “a party who fails to object to the jury’s composition before it is impaneled waives any right to complain thereafter.” McNeal v. State, 617 So.2d 999, 1003 (Miss.1993) (quoting Myers v. State, 565 So.2d 554, 557 (Miss.1990)).
¶ 27. During voir dire, the State asked about prior arrests, and Cash disclosed his DUI arrest. But the State asked to question him further in private. During this interview, the State asked Cash if he had any other arrests besides the DUI. Cash responded that he had “something else,” but he was told that it was not on his record and that he did not have to disclose it.
¶28. The State challenged Cash for cause based on his failure to disclose this other arrest — possession of cocaine — during the voir dire. Eley’s counsel argued forcefully that Cash had not been intentionally dishonest, because he gives his clients the same advice that Cash received. By fighting to keep Cash on the jury when the State challenged him for cause, Eley waived this issue.
¶ 29. We find that the trial court correctly denied Eley’s motion for a JNOY or, alternatively, his motion for a new trial, *130 because he did not prove Cash failed to respond truthfully to relevant, direct, and unambiguous questions during voir dire.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.