839 So.2d 588 (2003)
David C. GAUTIER, Lawrence L. Gautier, Walter Warren Gautier and Andre A. Gautier, Appellants,
v.
MISSISSIPPI TRANSPORTATION COMMISSION, Appellee.
No. 2001-CA-01795-COA.
Court of Appeals of Mississippi.
March 11, 2003.
Vincent J. Castigliola, Pascagoula, attorney for appellant.
*589 Donald E. Hinton, Jack Homer Pittman, Hattiesburg, attorneys for appellee.
Before SOUTHWICK, P.J., LEE and MYERS, JJ.
LEE, J., for the court.

PROCEDURAL HISTORY
¶ 1. On March 27, 1998, the Mississippi Transportation Commission (MTC) instituted an eminent domain action in the Jackson County Special Court of Eminent Domain against the appellants (Gautiers) to have a restaurant and docks owned by the Gautiers condemned, since they were in the path of a soon-to-be built bridge spanning the Pascagoula River. On the same day as the action was filed, the court entered a declaration of taking, and the MTC filed a notice of deposit in the amount of $562,900 with the court, which the MTC deemed to be just compensation for the property taken based on the appraisal. The court granted MTC the right of immediate title and possession to the property on April 10, 1998, and on April 15, 1998, the court granted the Gautiers's request to release the funds on deposit.
¶ 2. The court granted MTC's request to amend its complaint in June 1999 since the previous procedures had relied on a statute which was declared unconstitutional.[1] In September 1999, the court entered an amended order granting MTC the right of immediate title and possession and therein changed the previous appraisal amount to $603,000, which, when crediting the $562,900 previously deposited, left MTC with a balance due of $40,100. MTC deposited this sum with the court on September 22, 1999, but the Gautiers were not given formal notice of the deposit. In August 2001, an updated statement of values was filed with the court, with the revised appraisal amount of $831,100. MTC deposited $228,100 on September 8, 2001, which was the difference between this new amount and the previously noted amount.
¶ 3. On September 13, 2001, a trial was held to determine the proper amount due the Gautiers for the taking. After hearing from three experts, a jury returned a verdict in favor of MTC in the amount of $831,000, and at the Gautiers's request, the court added $100 to reflect the amended statement of values. The court denied the Gautiers's subsequent motion for additur or in the alternative a new trial, and they appeal to this Court raising the following issues: (1) Was the verdict of the jury contrary to the overwhelming weight of the credible evidence, or the result of bias, prejudice, or passion on the part of the jury? (2) Did the trial court err in refusing to grant the property owners an additur or in the alternative, a new trial? and (3) Did MTC fail to furnish property owners with notice of deposited funds, and should they be forced to pay property owners interest on that amount? We review each of these issues and find no merit; thus, we affirm.

FACTS
¶ 4. This case involves an eminent domain proceeding and whether or not the property owners received just compensation. The appellants in this case owned a restaurant and adjoining docks situated on the Pascagoula River in Jackson County. Plans were approved to build a high-rise bridge over the river to replace a dilapidated draw bridge, and to complete the project, the restaurant and docks had to be demolished. The Gautiers, however, did not agree with the amount MTC offered to pay them for their property.
*590 ¶ 5. At trial, MTC called two witnesses as experts. Webb Steadman explained the cost of improvements to the property and said with the improvements that construction cost of a new similar building and docks would be $940,936, which included labor and materials. Daniel Loflin, a staff appraiser for the MTC, was accepted as an expert in the field of real estate appraisals. Loflin testified that he took into account depreciation of the improvements and arrived at a value of $831,100. The Gautiers called Lance McCarty as an expert in the field of commercial construction and cost. McCarty testified that the total value of the building was $990,095, which included the replacement costs of the building and engineering costs.

DISCUSSION OF THE ISSUES
I. WAS THE VERDICT OF THE JURY CONTRARY TO THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE, OR THE RESULT OF BIAS, PREJUDICE, OR PASSION ON THE PART OF THE JURY?
¶ 6. This case involves the issues of eminent domain and just compensation for the property taken, and we first look to our applicable standard of review.
In State Highway Comm'n of Mississippi v. Havard, 508 So.2d 1099, 1105 (Miss.1987), the Mississippi Supreme Court quite thoroughly set forth the standard of review for jury verdicts in eminent domain cases as follows: As in the case of any other jury determination of damages, we are not at liberty to order a new trial unless the verdict is so at variance with the evidence as to shock the conscience of the court. Except where the verdict is grossly excessive and evinces bias, passion and prejudice by the jury, we have no authority to require the prevailing party to submit to a second adjudication. This rule applies in eminent domain cases as in others.
Carlton v. Mississippi Transp. Comm'n, 749 So.2d 170(¶ 23) (Miss.Ct.App.1999).
¶ 7. Concerning valuation of property in eminent domain cases, this Court has stated the following:
In cases of eminent domain, the burden of presenting competent evidence of fair value of the property being acquired rests with the condemning authority. If the authority fails to present competent evidence of value, then the acquisition of title to the property cannot occur. Evidence of value must, by statute, relate to a particular point in time-namely, the date of filing of the complaint commencing the acquisition process. "Evidence of fair market value shall be established as of the date of the filing of the complaint."
Williamson v. Lowndes Co., 723 So.2d 1231(¶ 3) (Miss.Ct.App.1998) (citations omitted).
¶ 8. With their first issue, the Gautiers argue the award of compensation was not commensurate with the evidence presented, and the trial judge erred in failing to grant their request for an additur. Specifically, they argue that the jury erred in relying on MTC's incorrect estimate, which resulted from improper reliance on MTC's expert, Webb Steadman, who failed to make adjustments to account for workers' compensation insurance and for engineering costs in arriving at his estimate. The Gautiers also argue that MTC grossly underestimated the costs for heating/air conditioning and electrical and plumbing costs, which, when combined with the insurance and engineering undervaluation, caused MTC's final estimate to be undervalued by $270,950. The Gautiers argue that in the "battle of experts," the jury should have relied on their expert whose *591 qualifications were far superior than those of MTC's expert.
¶ 9. The property at issue was a restaurant and adjoining dock located on the Pascagoula River. Three witnesses testified concerning the value of the property and/or replacement costs. First, Webb Steadman testified for MTC. Steadman earned a degree in construction technology and had worked in the construction business since 1977. He testified that he is licensed in this area, and described for the jury different projects he had built including a church, gas station convenience marts and restaurants, among other commercial buildings. Steadman explained that in calculating his bid price for a job, he would break the job down into components, then add overhead and profit and arrive at the bid figure. Steadman testified that he was able to walk through the restaurant at issue before it was destroyed, plus he had eaten there previously on several occasions, so he was quite familiar with the structure. Steadman's cost estimation for the building was $729,331 and estimate for the docks was $211,605. He explained that the figure he arrived at represented the cost to build the restaurant as it existed at the time he walked through it in August 1997, and he presented drawings which broke down each element of the cost for the jury. These figures did not account for depreciation, but only reflected the cost of new construction. On cross-examination Steadman admitted he did not consult subcontractors in arriving at his estimate for services including heating and air conditioning, plumbing, electrical and the like, but that he used ballpark figures based on past experience.
¶ 10. Next, MTC called Daniel Lofton to testify. Lofton testified he has worked as a real estate appraiser for the Mississippi Department of Transportation since 1993, and he is a certified general appraiser in the state, which is the highest level license designation in Mississippi. Lofton stated he had appraised everything from simple residential properties to commercial and industrial properties. In 1997 the MTC asked Lofton to estimate the fair and just compensation due the Gautiers for the property at issue. Lofton described that he conducted an appraisal of the condition of the property before the highway was constructed, then again after the highway was built, and the difference between those two values is what he allotted. He explained that in conducting the appraisals, he found sales in the area and used the cost approach to value the property, since the property is so unique in that it is located on the water. Lofton explained that in using the cost approach, he used two contractors' estimates, including Steadman's, to arrive at the cost of the new restaurant. He also figured in eleven percent depreciation to the building and fourteen percent depreciation to the docks using a nationally accepted method which takes into account the age of the building, how long the building will actually stand, improvements and the like. Lofton said he actually visited the property several times, and his estimate of $831,100 was fair and just compensation for the Gautiers.
¶ 11. Finally, the Gautiers called Lance McCarty to testify. At the time of trial, McCarty was part-owner of Fletcher Construction Company, where he engaged in industrial and commercial construction on the Gulf Coast. McCarty had worked in the construction business for twenty years, but he admitted he was not a licensed contractor, but more of an estimator and project manager or a "mother" to the company, as he described himself. McCarty did not see the structure before it was demolished, but was able to review a videotape and photographs of the restaurant. McCarty estimated that the replacement *592 cost to rebuild the restaurant new was $114.74 per square foot for the 8,148 square foot building, which totals to $990,995 for the building, not including the docks.
¶ 12. The Mississippi Supreme Court has stated that when a jury award is between the values offered by the experts, such an award cannot be said to have been influenced by bias, passion or prejudice. Brown v. Mississippi Transp. Comm'n, 749 So.2d 948(¶ 55) (Miss.1999). Apparently choosing to rely most heavily on the testimony of appraiser Daniel Lofton, the jury arrived at the figure of $831,000. Immediately after the jury was polled, the attorney for MTC alerted the judge that the stated value was $831,100, to which the judge replied he would correct the problem. Having done so, the amount was between those values offered by all three experts, and in accordance with Brown, we cannot find that the award was influenced by bias, passion or prejudice; thus, we affirm on this issue.
II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT THE PROPERTY OWNERS AN ADDITUR OR IN THE ALTERNATIVE, A NEW TRIAL?
¶ 13. The Gautiers next argue that the judge erred in denying their motion for additur or new trial. The authority for a judge to impose an additur is found in the Mississippi Code:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence....
Miss.Code Ann. § 11-1-55 (Rev.2002).
¶ 14. Additionally, we note our familiar standard of review concerning motions for new trial.
This Court gives the trial court great deference in determining whether a new trial should be granted. If there is substantial evidence to support the jury award, or if the award is not so large or inadequate as to shock the conscience of the Court, or is not the result of bias, passion or prejudice on the part of the jury, this Court will not reverse an award of damages. However, if this Court, or any other court of record, "finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence," a motion for a new trial still may be overruled upon condition of additur or remittitur.
Odom v. Roberts, 606 So.2d 114, 118 (Miss. 1992) (citations omitted).
¶ 15. As described in the first issue, we cannot find that the weight of evidence was against the jury's verdict. Evidence included videotapes and photographs of the property, plus testimony from three different experts in relevant fields. Taken together, these all provided substantial evidence to support the jury award. Having previously found that the jurors were not influenced by bias or prejudice, we find that the judge did not abuse his discretion in denying the motion for additur or new trial.
III. DID MTC FAIL TO FURNISH PROPERTY OWNERS WITH NOTICE OF DEPOSITED FUNDS, AND SHOULD THEY BE FORCED TO *593 PAY PROPERTY OWNERS INTEREST ON THAT AMOUNT?
¶ 16. With the Gautiers's final issue, they argue MTC erred in failing to notify them of funds deposited; thus, they are entitled to interest from the date of deposit. The Gautiers cite to Miss.Code Ann. § 75-17-1 (Supp.2002) ("The legal rate of interest on all notes, accounts and contracts shall be eight percent (8%) per annum....") and to art. 3, § 17 of the Mississippi Constitution (Mississippi's "taking" section of the State constitution) in arguing they are entitled to eight percent interest on unpaid funds.
¶ 17. Following is a chronology of events as they occurred with regard to deposits:
3-27-98: complaint filed, containing notice that property was valued at $562,900; amount deposited the same day with court clerk
4-15-98: Gautiers received notice of court deposit and entered order authorizing release of funds on deposit (funds disbursed to Gautiers 4-29-98)
9-22-99: $40,100 deposited with court clerk on behalf of Gautiers; no notice given to Gautiers of deposit
8-14-01: second statement of values filed, assessing property value at $831,100
9-8-01: MTC deposited additional $228,100 with court clerk, and clerk orally told Gautiers of the deposit (disbursed 9-17-01)
¶ 18. The Gautiers argue that pleadings require reasonable notice to parties and that MTC's lack of notice concerning these deposits entitles them to interest from the time of deposit to their discovery. Eight percent of the $40,100 deposit would amount to over $6,000 in accrued interest, and eight percent of the $228,100 deposited 9-8-01 and discovered 9-17-01 would amount to approximately $450 in accrued interest.
¶ 19. In Mississippi State Highway Comm'n v. Owen, 310 So.2d 920 (Miss. 1975), the supreme court explained that once deposited, the clerk acquired control of the funds and the commission was not responsible for interest from the point of deposit to the time the landowner withdrew the funds.
When the highway commission deposited these funds with the clerk of the court, it had no further control of the funds and no right to withdraw them. The only person who could have obtained and used the money was the landowner.... Under these circumstances, the commission should not and is not required to pay interest on this amount deposited after the date of its deposit.
Id. at 922. In the present case, once MTC deposited the funds, the Gautiers had the right to withdraw the funds from any point thereafter. Concerning MTC's responsibility to give the Gautiers notice of the deposits, we find no obligation exists for the depositor, and in accordance with Owen, we find MTC is not responsible for interest.
¶ 20. THE JUDGMENT OF THE JACKSON COUNTY SPECIAL COURT OF EMINENT DOMAIN IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] See Lemon v. Miss. Transp. Comm'n, 735 So.2d 1013(¶ 40) (Miss.1999).