900 So.2d 1193 (2004)
SPORTS PAGE INCORPORATED d/b/a David M's Investments, David E. Mattina, Jr. d/b/a Sports Page Incorporated, David E. Mattina, Jr. d/b/a Boomers and David E. Mattina, Jr., Individually, Appellants/Cross Appellees
v.
Charles N. PUNZO d/b/a Punzo Construction Co., Appellee/Cross-Appellant.
No. 2003-CA-00319-COA.
Court of Appeals of Mississippi.
November 23, 2004.
Rehearing Denied February 8, 2005.
Certiorari Denied May 5, 2005.
*1196 Steven Alfred Kohnke, Fred Mannino, Biloxi, attorneys for appellant.
Earl L. Denham, Wendy C. Hollingsworth, Ocean Springs, attorneys for appellee.
Before KING, C.J., IRVING and MYERS, JJ.
MYERS, J., for the Court.
¶ 1. On May 5, 1998, Charles Punzo, d/b/a Punzo Construction Company, filed a complaint against David Mattina, d/b/a David M's Investments, in the Circuit Court of Harrison County, Mississippi, Second Judicial District, alleging breach of an oral contract to renovate a commercial building. On December 10, 1999, Punzo filed his amended complaint, in which the name of the defendant, Mattina, was corrected. On February 4, 2000, Mattina answered, denying the substance of the claims against him, and counterclaimed against Punzo for improperly performing work under the contract and for tortious interference with business. The matter proceeded through discovery to a trial on the merits. On October 22, 2002, the circuit court granted Punzo's motion for directed verdict on Mattina's counterclaims.
¶ 2. Also, on October 22, 2002, the jury returned a verdict in favor of Punzo and awarded him $94,166.89 in damages. On October 29, 2002, a judgment on jury verdict was entered in which the court allowed Punzo to move for attorney's fees but denied his request to submit the issue of punitive damages to the jury. On November 7, 2002, Mattina filed motions for a new trial and for modification of judgment, which were subsequently denied by the court. On November 8, 2002, Punzo filed a motion to amend judgment to change the prejudgment interest calculation date. On January 16, 2003, the circuit court entered an amended judgment awarding Punzo attorney's fees of $50,025.86 and prejudgment interest on the principal amount of $88,743.48, dating from the filing of the amended complaint. Mattina appeals, asserting the following issues:
I. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A NEW TRIAL GIVEN ITS FINDINGS ON THE ISSUE OF PUNZO'S LEASE WITH CSX?
II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A NEW TRIAL GIVEN ITS RULINGS ON MATTINA'S COUNTERCLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS?
III. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A NEW TRIAL GIVEN ITS DECISION NOT TO ALLOW THE TESTIMONY OF MATTINA'S EXPERT WITNESS?
IV. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A NEW TRIAL GIVEN ITS DECISION TO GRANT PUNZO'S MOTION FOR DIRECTED VERDICT ON MATTINA'S COUNTERCLAIM FOR FAILURE TO PROPERLY PERFORM WORK UNDER THE CONTRACT?

*1197 V. DID THE TRIAL COURT ERR IN AWARDING ATTORNEY'S FEES TO PUNZO?
VI. DID THE TRIAL COURT ERR IN AWARDING PREJUDGMENT INTEREST TO PUNZO?
VII. DID THE TRIAL COURT ERR IN NOT GRANTING A REDUCTION IN THE AMOUNT OF THE DAMAGES AWARD?
VIII. DID THE TRIAL COURT ERR IN EXCLUDING EVIDENCE OF A CHECK ALLEGEDLY OFFERED BY MATTINA TO SETTLE THE CASE?
¶ 3. Finding that the trial court erred in awarding attorney's fees and prejudgment interest, we reverse and render on the award of attorney's fees and prejudgment interest. Finding no reversible error in any of the remaining issues on appeal, we affirm the trial court's ruling on those remaining issues.
¶ 4. Punzo raises the following issue on cross-appeal:

I. DID THE TRIAL COURT ERR IN FIXING THE DATE FOR CALCULATION OF PREJUDGMENT INTEREST?
¶ 5. Having found that the award of prejudgment interest, whenever calculated, was improper, we find that this issue is moot.

FACTS
¶ 6. Mattina wished to renovate the old Geno's Pizza building in Biloxi and open a new restaurant in that location. While dining out one night, Mattina saw Punzo and recalled that Punzo had done similar construction work for Mattina in the past. They discussed the project, Punzo viewed the building to be renovated, and Punzo agreed to perform the work at a future date. The contract was entirely oral, and there were no formal plans or specifications prepared. Instead, Mattina simply asked Punzo to spruce the place up and bring it "up to code," and Punzo agreed orally to work on the cost-plus basis used on other jobs for Mattina.
¶ 7. Punzo acquired a $20,000 building permit, Mattina paid Punzo a $15,000 initial draw, and the work began. Because there was no written contract or set specifications, the requirements for the work often changed, and many aspects of the project required redoing or extra work. During the course of the project, Mattina paid $85,000 in draws to Punzo.
¶ 8. When the job was completed, Punzo telephoned Mattina to discuss the final bill for the project. Mattina wanted to be told the final amount over the phone, but Punzo, expressing some reluctance, preferred to deliver the bill personally. Mattina insisted on being told the final amount, and Punzo finally obliged. The total cost for the project was $173,743.48. This apparently unexpected amount "knocked the socks off" of Mattina, who lost his temper and, as human beings are want to do in a fit of anger, hurled certain choice expletives at Punzo. Unmoved, Punzo stood by his bill and demanded payment. Mattina replied that the bill was too high and that Punzo would have to take legal action in order to receive payment. As a result, Punzo brought this suit.

LEGAL ANALYSIS

I. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A NEW TRIAL GIVEN ITS FINDINGS ON THE ISSUE OF PUNZO'S LEASE WITH CSX?
¶ 9. The first issue on appeal, as we have stated, combines two of the issues asserted by Mattina. Mattina argues, in essence, that the trial court erred in not granting a new trial given its rulings on the issue of Punzo's lease with CSX. Punzo argues that *1198 the trial court's ruling in this regard was correct.

STANDARD OF REVIEW
¶ 10. We review a trial court's grant or denial of a motion for new trial for abuse of discretion. Redhead v. Entergy Mississippi, Inc., 828 So.2d 801, 806 (¶ 11) (Miss. Ct.App.2001). We give the trial court's ruling on a motion for new trial great deference, and we will only reverse if the verdict shocks the conscience of the court or represents a miscarriage of justice. Gautier v. Mississippi Transp. Comm'n, 839 So.2d 588, 592 (¶ 14) (Miss.Ct.App.2003); Estate of Carter v. Phillips And Phillips Const. Co., Inc., 860 So.2d 332, 336 (¶ 13) (Miss.Ct.App.2003).

DISCUSSION
¶ 11. After the dispute arose between the parties, Punzo leased from CSX an adjacent property to the newly renovated building, now Jazzepi's Restaurant. The adjacent property had been used for some years by the previous occupant of the building as parking space. Punzo leased the property and put up a fence of some kind to prevent anyone from parking on the leased space. The fence was entirely on the leased property and did not prevent anyone from physically entering Jazzepi's Restaurant. Punzo may have intended this action as a self-help measure to pressure Mattina into paying the final bill for the renovation work, but this fact was not conclusively decided by the trial court. After a short time, during which Mattina secured a temporary restraining order and filed suit in the chancery court, Punzo abandoned the lease. Mattina then dismissed his action in chancery court.
¶ 12. The trial judge ruled that Punzo's actions on his leased property were legal, not tortious, and that Mattina's failure to secure adequate parking for his customers did not transform Punzo's otherwise legal use of his leased property into a tortious interference with business. Based upon these findings, the trial court excluded evidence of the lease and the actions Punzo took under the lease. There was also apparently some concern that the jury might be confused by this evidence.
¶ 13. In spite of the exclusion of this evidence, and much to the chagrin of the trial judge, Mattina attempted on several occasions to re-visit the issues surrounding the CSX lease and the way Punzo acted under that lease. Mattina apparently hoped to tarnish Punzo's image in the eyes of the jury by putting on evidence of Punzo's supposed malicious misuse of his legal rights under the CSX lease.
¶ 14. Employing the applicable standard of review, which requires viewing the evidence in a light most favorable to the non-movant and taking as true all evidence supporting the claims or defenses of the non-moving party, we find that the trial court's rulings on this issue and subsequent refusal to grant a new trial based upon alleged error in those rulings did not constitute an abuse of discretion. Estate of Carter, 860 So.2d at 336 (¶ 13). The trial court acted well within its discretion in holding that Punzo's actions as lessee of the adjacent property did not constitute a tort in this case. While the previous occupant of the building had apparently used the leased property for parking, there is no indication that the previous occupant or Mattina had any legal right to use the property. Other than reference to a custom or tradition of customers of the building parking on the leased property, Mattina offered no proof of title or other legal right to use the leased property. Mattina's assumption that the parking tradition would continue indefinitely does not rise to the level of a legal right that could have been violated by the particular actions taken *1199 by Punzo under the lease. The record does not reflect that Mattina made any showing of a prescriptive right to use the leased property for parking.
¶ 15. Punzo did nothing outside the physical bounds of his leased property, and he did nothing to physically restrict customer access to the restaurant. That is, he did not maintain any kind of obstruction in front of the building or on a public street that would have prevented customers from entering the restaurant. Punzo merely prevented unwanted guests from parking on his leasehold.
¶ 16. Although such a claim might possibly be made, a trial court would likely be hard pressed to find a tort in a lessee's mere refusal to allow unwanted guests to park on his leased property. Private citizens are free to purchase leases and, having purchased a lease, then to exclude others from entering the leased property. Ewing v. Adams, 573 So.2d 1364, 1368 (Miss.1990) (noting that "a tenant may put the leased premises to whatever lawful purpose it so desires consistent with the design and construction of the property" and that "the lessee stands in the position of an owner in fee with regards to rights of user. . . .").
¶ 17. We can find no abuse of discretion in the trial court's rulings on this issue; therefore, we affirm the denial of Mattina's motion for a new trial based upon the trial court's rulings on Punzo's lease with CSX.

II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A NEW TRIAL GIVEN ITS RULINGS ON MATTINA'S COUNTERCLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS?
¶ 18. Mattina states several other issues on appeal that touch upon his counterclaim for tortious interference with business, including the trial court's denial of a new trial given the allegedly incorrect directed verdict on the counterclaim, and refusal of jury instructions on the issues underlying the counterclaim. Although Mattina has stated these issues separately, they interrelate to such an extent that they may be discussed together. In addition, these issues interrelate with the first issue discussed above; thus, much of the discussion of the first issue applies equally to this issue.

STANDARD OF REVIEW
¶ 19. Mattina asserts that the trial court erred in refusing to grant a new trial based upon its rulings on the counterclaim for tortious interference with business. The same abuse of discretion standard of review as mentioned under the first issue above also applies to these issues. Redhead, 828 So.2d at 806 (¶ 11); Gautier, 839 So.2d at 592 (¶ 14); Estate of Carter, 860 So.2d at 336 (¶ 13).

DISCUSSION
¶ 20. The case relied upon by the trial court in ruling on the claim of tortious interference with business was Cenac v. Murry, 609 So.2d 1257 (Miss.1992). The Cenac case held that, "[A] cause of action exists where one engages in some act with a malicious intent to interfere and injure the business of another, and injury does in fact result." Id. at 1271. The Cenac court went on to say, "The remedy for the tort is damages, and the plaintiff must also show (1) a loss, and (2) that defendant's conduct caused the loss." Id. at 1271 (citing Prosser and Keeton, The Law of Torts, § 130, 141 (5th ed. Supp.1988)). Thus, the basic elements of the tort of interference with business are three, namely (1) acts evidencing malicious intent to interfere with another's business, (2) caused by the defendant, and (3) injury or loss flowing from those acts. Id. at 1271-72.
¶ 21. In granting Punzo's motion for directed verdict, the trial judge ruled *1200 that even if Mattina could show that Punzo's actions under the CSX lease were malicious, Mattina had failed to put forth evidence of injury or loss. On that basis, the trial court granted Punzo's motion for directed verdict on the tortious interference with business counterclaim. As discussed under the first issue above, the record does not firmly establish that Punzo's actions under the CSX lease were malicious. Yet, our review of the record reveals that even if Punzo's actions could be seen as malicious, it is doubtful that Mattina could have established damages.
¶ 22. The Cenac case clearly holds that damages must be shown by something more than mere speculation, and the trial court found that Mattina could not make such a showing. Id. The record reflects that the allegedly tortious actions of Punzo ceased after only four days. Moreover, given the newness of the business, any evidence offered by Mattina to show loss of customers or revenues likely would have been speculative. But we do not conclusively decide this question here. We simply find that, taking these facts as they appear in the record and employing the applicable standard of review, the trial court did not abuse its discretion in refusing to grant a new trial based upon its ruling on Mattina's counterclaim for tortious interference with business.
¶ 23. Mattina also asserts as error the refusal of jury instructions D-4, D-4A, and D-8. These three instructions relate to the counterclaim for tortious interference with business. Having found that the trial judge did not err in refusing to grant a new trial based upon the directed verdict on Mattina's counterclaim, we find that the subsequent refusal of jury instructions related to that counterclaim was not improper. Therefore, we affirm the trial court's refusal to grant a new trial based upon these rulings.

III. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A NEW TRIAL GIVEN ITS DECISION NOT TO ALLOW THE TESTIMONY OF MATTINA'S EXPERT WITNESS?
¶ 24. Mattina casts this issue, as the first two issues, in terms of error for refusal to grant a new trial. He asserts that the trial court erred in refusing to grant a new trial in light of the trial court's decision to exclude testimony of Mattina's expert witness. Punzo argues that the expert witness's testimony was properly excluded.

STANDARD OF REVIEW
¶ 25. Because this issue, as the first two issues discussed above, also seeks review of a decision not to grant a new trial, the same standard of review used in the first two issues applies here. Redhead, 828 So.2d at 806 (¶ 11); Gautier, 839 So.2d at 592 (¶ 14); Estate of Carter, 860 So.2d at 336 (¶ 13). A similar, abuse of discretion standard of review would apply, however, were we to review the evidentiary ruling itself. Daughtry v. Kuiper, 852 So.2d 675, 679 (¶ 19) (Miss.Ct.App.2003) (holding that "[t]he admission of expert testimony is controlled by the trial judge's discretion. This Court will not disturb the trial judge's decision unless there was a clear abuse of that discretion."); Mississippi Transp. Comm'n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss.2003) (finding that "the admission of expert testimony is within the sound discretion of the trial judge."). In either case the result would be the same, because we can find no abuse of discretion in the trial court's decision to exclude the expert testimony or to refuse to grant a new trial.

DISCUSSION
¶ 26. Mississippi now employs a "modified Daubert standard" in determining the admissibility of expert testimony which requires a two-prong inquiry by the *1201 trial court. Mississippi Transp. Comm'n, 863 So.2d at 39 (¶ 22). In employing the standard, the court must first determine if the expert testimony is relevant, or, in other words, whether the expert testimony will "assist the trier of fact." Mathis v. Exxon Corp., 302 F.3d 448, 460 (5th Cir. 2002) (citing FED.R.EVID. 702). Second, the court must determine whether the expert testimony is reliable. Mississippi Transp. Comm'n, 863 So.2d at 38(¶ 16). A trial court has discretion in making these determinations on expert testimony, and a decision will be reversed only if the trial court abused its discretion. Id. at 39 (¶ 24).
¶ 27. The trial court ruled, in essence, that expert testimony would not assist the trier of fact in this case. The trial court found that the jury was capable of understanding the issues and reaching a correct decision without the aid of expert testimony. In so ruling, the trial judge, exercising his discretion, found one of the essential factors for the admission of expert testimony to be lacking. The trial court specifically declined to say that the witness was not qualified as an expert.
¶ 28. We can find no abuse of discretion in this ruling, and, having found that the trial court did not abuse its discretion in deciding the underlying evidentiary issue, we cannot find that the trial court erred in failing to grant a new trial based upon this evidentiary ruling. Therefore, we affirm the trial court's refusal to grant a new trial based upon the exclusion of Mattina's expert witness.

IV. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A NEW TRIAL GIVEN ITS DECISION TO GRANT PUNZO'S MOTION FOR DIRECTED VERDICT ON THE COUNTERCLAIM FOR FAILURE TO PROPERLY PERFORM WORK?
¶ 29. Mattina argues that the trial court erred in refusing to grant a new trial given its decision to dismiss the counterclaim for failure to properly perform work. Mattina argues that a new trial should have been granted because evidence that would have supported a res ipsa loquitur argument had been presented to the court. Flowing from this issue, Mattina also argues that the trial court erred in refusing jury instruction D-2A, which spoke to the issue of failure to properly perform work under the contract. Punzo argues that Mattina did not raise the issue at trial and that in any event res ipsa loquitur could not have been established from the facts in the case.

STANDARD OF REVIEW
¶ 30. As this issue is cast in terms of error for refusal to grant a new trial, our standard of review here again is abuse of discretion. Redhead, 828 So.2d at 806 (¶ 11); Gautier, 839 So.2d at 592 (¶ 14); Estate of Carter, 860 So.2d at 336 (¶ 13).

DISCUSSION
¶ 31. Mattina makes a very difficult argument based upon the theory of res ipsa loquitur, a doctrine under which negligence can be inferred in certain factual situations. Contrary to the statements of both parties in their briefs, the doctrine requires three elements to be met:
Res ipsa loquitur may be applied only when three elements are present. First, the defendant must have control and management of the instrumentality causing the plaintiff's injury. Moreover, "the injury must be such that in the ordinary course of things it would not occur if those in control of the instrumentality used proper care." Third and finally, res ipsa loquitur only applies where the injury is not a result of the plaintiff's voluntary act.
Powell v. Methodist Health Care-Jackson Hospitals, 876 So.2d 347, 349(¶ 7) (Miss. 2004) (citations omitted).
*1202 ¶ 32. In addition, "[T]his doctrine [of res ipsa loquitur ] should be cautiously applied." Id. Mattina argues that all of the necessary elements for res ipsa loquitur were met given the facts in this case, and Punzo argues that none of the elements were met. Our review of the record indicates that the facts of this case do not support the presumption of negligence triggered by the operation of res ipsa loquitur. The first of the three elements was arguably met, in that Punzo's subcontractors, had control and management of the instrumentalities potentially causing Mattina injury on this construction project.
¶ 33. However, neither of the remaining elements were present in this case. Commenting upon the limits of the doctrine and the second element particularly, our Supreme Court has said:
[Res ipsa loquitur] (1) has no operation to excuse or dispense with definite proof, by the plaintiff, of material facts which are tangible and are capable of direct and specific evidence, as much within the power of plaintiff to produce as of the defendant; and (2) it is available to establish negligence on the part of the defendant only when the accident is such that, according to ordinary human experience, it could not have happened without such negligence; from which it follows that the doctrine does not apply when, upon the whole case, there has been specific proof which discloses some reasonable explanation for the happening other than the negligence charged against the defendant.
Winters v. Wright, 869 So.2d 357, 364 (¶ 15) (Miss.2003) (citing Yazoo & M.V.R. Co. v. Skaggs, 181 Miss. 150, 179 So. 274, 277 (1938)).
¶ 34. Because of these limitations, Mattina would have had to produce credible evidence that the defects could not have occurred absent the contractor's negligence. Various repairs to commercial buildings are required in the ordinary course of things, be they plumbing, electrical or other types of repairs. This fact can hardly be doubted by anyone who has maintained an office or conducted business from a commercial building, but we do not mean to say that, as a matter of law, no defect in a commercial building could trigger the application of res ipsa loquitur. We simply note that many repairs to commercial buildings are routine, and Mattina was required to make a sufficient showing that the repairs he had to make were so extraordinary that they could not have been necessary unless Punzo or his subcontractors had been negligent. The record does not indicate that Mattina made such a showing. Thus, the second required element of res ipsa loquitur is lacking.
¶ 35. The third element is also lacking, in that Mattina put on no proof that his alleged damages were not caused by his own voluntary actions. In essence, Mattina asserts that the plumber's declaration that the plumbing in the building was functioning properly at the close of the work makes the mere occurrence of subsequent problems sufficient to raise the presumption of negligence attendant to a finding of res ipsa loquitur. The caution the court is to exercise in applying the doctrine, however, demands that something more than mere assertion be present before finding res ipsa loquitur. Powell, 876 So.2d at 349(¶ 7). As with the second element, Mattina would have had to produce some "definite proof . . . of material facts which are tangible and are capable of direct and specific evidence," Winters, 869 So.2d at 364 (¶ 15), in order to satisfy this element. The record does not reflect that Mattina produced such definite proof.
¶ 36. We hasten to point out that we do not hold that Mattina in fact caused his *1203 own plumbing or other alleged problems in the building. We find only that for purposes of our analysis of his res ipsa loquitur argument, Mattina has failed to make a sufficient showing to establish the third element.
¶ 37. Therefore, having found the second and third elements of res ipsa loquitur to be lacking, we find that the trial court did not abuse its discretion in refusing to grant a new trial based upon its ruling on this issue.

V. DID THE TRIAL COURT ERR IN AWARDING ATTORNEY'S FEES TO PUNZO?
¶ 38. Mattina argues that the trial court erred in awarding attorney's fees because the contract in issue did not provide for attorney's fees upon breach and the court found that the actions of Mattina did not justify submitting the question of punitive damages to the jury. Punzo argues that the trial court did not abuse its discretion because Mattina's actions made Punzo's attorney's fees foreseeable.

STANDARD OF REVIEW
¶ 39. We review a trial court's ruling on attorneys' fees for abuse of discretion. Mississippi Dep't of Wildlife, Fisheries and Parks v. Mississippi Wildlife Enforcement Officers' Ass'n, Inc., 740 So.2d 925, 937 (¶ 43) (Miss.1999) (quoting Bank of Miss. v. Southern Mem'l Park, Inc., 677 So.2d 186, 191 (Miss.1996) (citing Barber v. Barber, 234 Miss. 89, 105 So.2d 630 (1958))); Sentinel Industrial Contracting Corp. v. Kimmins Industrial Service Corp., 743 So.2d 954, 970-71(¶ 50) (Miss. 1999).

DISCUSSION
¶ 40. Mattina cites to the case of Sentinel, 743 So.2d at 970-71(¶ 50). The Sentinel case declared, consistent with prior precedent, that in general attorney's fees may be awarded in two circumstances: (1) where the contract or a statute provides for attorney's fees or (2) where the losing party's conduct was outrageous enough to warrant punitive damages. The court there said, specifically:
"It is well settled that attorney's fees are not to be awarded unless a statute or other authority so provides." Mississippi Dep't of Wildlife, Fisheries & Parks, 740 So.2d at 937. "In breach of contract cases, attorney fees generally are not awarded absent provision for such in the contract or a finding of conduct so outrageous as to support an award of punitive damages." Garner v. Hickman, 733 So.2d 191, 198 (Miss. 1999). As discussed below, the record did not support an instruction against Seaboard/St. Paul for punitive damages, and none are claimed against Sentinel/Centre. The contracts in this case contained no provision governing the award of attorneys' fees. Under the general law in Mississippi, Kimmins was not entitled to attorneys' fees in this case.
Sentinel, 743 So.2d at 971 (¶ 51).
¶ 41. As the quote above demonstrates, the contract involved in Sentinel did not provide for attorney's fees, and the record of the case did not support an award of punitive damages. Therefore, the court concluded that attorney's fees were not proper.
¶ 42. Sentinel, thus, stands for the proposition that in the absence of contractual or statutory provision or conduct that would support an award of punitive damages, attorney's fees ordinarily will not be proper. Mattina and Punzo both agree that their contract did not provide for attorney's fees, and the trial judge below held that Mattina's conduct did not support an award of punitive damages. *1204 Therefore, under the general rule, as stated in Sentinel, attorney's fees should not have been awarded to Punzo. Punzo, however, points this Court to other authorities.
¶ 43. For his contention that the award of attorney's fees was proper even though the contract did not provide for attorney's fees and punitive damages could not have been awarded, Punzo cites to the cases of Garner v. Hickman, 733 So.2d 191, 198 (¶ 23-24) (Miss.1999), another construction case, and Universal Life Ins. Co. v. Veasley, 610 So.2d 290, 295 (Miss.1992).
¶ 44. The Garner decision held that, given the circumstances, attorney's fees may be awarded even in the absence of actions that would have given rise to punitive damages. The "circumstances" spoken of in Garner are those that would support a claim under the Litigation Accountability Act of 1988, Miss.Code Ann. § 11-55-5 (Rev.2002), or damages under Veasley. Garner, 733 So.2d at 198(¶ 23). Under the rule announced in Garner, to justify an award of attorney's fees in the absence of contractual or statutory provision or conduct giving rise to punitive damages, the trial judge would have had to find that Mattina filed a claim or asserted a defense for purposes of harassment or that Mattina acted to unreasonably prolong the case, or that Veasley-type conduct was present in the case. Id.
¶ 45. Veasley, a case involving an insurance company's negligent failure to timely pay a death benefit, held that even in the absence of bad faith refusal to pay claims, an insurance company may be liable for attorney's fees as one of several items of foreseeable damages to plaintiffs whose sufferings due to the loss of a loved one have been exacerbated by an insurer's failure to timely pay a death benefit. Veasley, 610 So.2d at 295.
¶ 46. Garner asserts, without any elaboration, that "Veasley damages" could be recoverable in many construction cases, although the court found that no such damages were recoverable in the Garner case. Garner, 733 So.2d at 198(¶ 24). While there may be some uncertainty about what conduct exactly gives rise to an award of "Veasley damages," we can safely say that the general rule on attorney's fees remains intact. Moreover, regardless of any uncertainty as to what conduct exactly would justify "Veasley damages," the award of attorney's fees in this case was improper. This is so for two reasons.
¶ 47. First, contrary to Punzo's assertion, neither Garner nor Veasley stands for the proposition that attorney's fees may be awarded in a breach of contract case simply because they are foreseeable. Garner references the additional standards from Mississippi Code Annotated § 11-55-5 (Rev.2002) and Veasley only after having previously reaffirmed the general rule on an award of attorney's fees. Garner, 733 So.2d at 198 (¶ 23). Veasley declares that an insurer should foresee that failure to timely pay a death benefit will cause various damages to the beneficiaries, including attorney's fees. Veasley, 610 So.2d at 295. But neither Veasley nor Garner establish a new, pure foreseeability standard for awarding attorney's fees in a breach of contract case.
¶ 48. Second, and most importantly, the trial court below did not base its award of attorney's fees on Garner, Veasley or any other correct legal standard. In ruling on the issue of attorney's fees, the trial court found that Mattina's "wilful and wanton" failure to enter into any meaningful settlement negotiations rendered the award of attorney's fees proper, even though punitive damages were not appropriate. This "failure to attempt to settle" standard for awarding attorney's fees in breach of contract cases appears nowhere in our jurisprudence. None of the cases cited in the *1205 briefs support this standard, and we can find no authority that establishes this standard.
¶ 49. Mississippi Code Annotated § 11-55-5 (Rev.2002) does indeed declare that attorney's fees may be awarded where a party "unnecessarily expanded the proceedings by . . . improper conduct," and that section might perhaps have been offered as authority for an argument that Mattina unnecessarily expanded the proceedings by improperly refusing to settle a claim that he knew he owed. Given our review of the record, however, not only do we doubt that such an argument would have had merit, we also note that neither the trial court nor Punzo cited § 11-55-5 or its language in support of the award of attorney's fees. Instead, the trial court and Punzo harkened back to the requirements for an award of punitive damages, which the trial court found to be lacking.
¶ 50. Further, the trial court and Punzo both stated on the record that the rulings on the punitive damages issue and the attorney's fees were inconsistent. In addition, whether Mattina had a duty to attempt to settle or not, the record reveals that the trial court's conclusion about Mattina's failure to attempt to settle was probably incorrect. However, we do not decide that question definitively, because the record does not support the finding that Mattina's actions were in bad faith or so improper as to run afoul of § 11-55-5. We find that the trial court abused its discretion; therefore, we reverse the award of attorney's fees and render judgment in favor of Mattina on that issue.

VI. DID THE TRIAL COURT ERR IN AWARDING PREJUDGMENT INTEREST TO PUNZO?
¶ 51. Mattina argues that the award of prejudgment interest constituted an abuse of discretion, in that neither of the two grounds for awarding prejudgment interest were present. Punzo argues that the award was proper under either ground for awarding prejudgment interest.

STANDARD OF REVIEW
¶ 52. We review a trial court's ruling on prejudgment interest for abuse of discretion. Sentinel Industrial Contracting Corp. v. Kimmins Industrial Service Corp., 743 So.2d 954, 970-71(¶ 50) (Miss. 1999); Preferred Risk Mut. Ins. Co. v. Johnson, 730 So.2d 574, 577(¶ 11) (Miss. 1998).

DISCUSSION
¶ 53. The general rule holds that prejudgment interest may be awarded where the claim is liquidated or where there is a bad faith refusal to pay an amount owed. Warwick v. Matheney, 603 So.2d 330, 342 (Miss.1992). "Key to the awarding of prejudgment interest is the requirement that there be a liquidated amount due or a frivolous or bad faith denial of a claim." Hans Const. Co., Inc. v. Drummond, 653 So.2d 253, 264 (Miss. 1995). Thus, prejudgment interest may be awarded on two alternate grounds: (1) where there is a liquidated amount due or (2) a bad faith refusal to pay. Id. Each of these will be discussed in turn.

(1) Liquidated amount due
¶ 54. On this particular element, the court has said quite plainly, "No award of prejudgment interest may rationally be made where the principal amount has not been fixed prior to judgment." Warwick 603 So.2d at 342 (citing Stanton & Assoc., Inc. v. Bryant Const. Co., 464 So.2d 499, 504 (Miss.1985)). The court has elaborated on this idea by saying that contested issues regarding the measure of damages generally make a claim unliquidated. For example, the Warwick case declares, "Matheney's damages were not liquidated. *1206 There were several contested issues regarding the measure of damages." Warwick, 603 So.2d at 342. Another case reinforces this principle by noting, "In the case sub judice, damages were unliquidated . . . [T]he record reflects a legitimate dispute as to the amount of damages. Therefore, the lower court did not err in denying Doleac's claim for prejudgment interest." Aetna Cas. & Sur. Co. v. Doleac Elec. Co., Inc., 471 So.2d 325, 331 (Miss.1985). These cases demonstrate that generally an amount of damages not fixed prior to judgment or an amount of damages that is legitimately in dispute is not liquidated.
¶ 55. However, our supreme court has noted that prejudgment interest might be allowed even if the amount of loss is in dispute. "[W]e can envision cases where, in the discretion of the trial court interest should be allowed although the amount of the loss is in dispute and for this reason we do not foreclose the allowance of interest in every case where the claim is unliquidated." Preferred Risk Mut. Ins. Co. v. Johnson, 730 So.2d 574, 577-78(¶ 15) (Miss.1998). The Sentinel case, says similarly: "[P]rejudgment interest may be awarded even where the amount of damages is in dispute." Sentinel, 743 So.2d at 971(¶ 53) (citing Preferred Risk, 730 So.2d at 578(¶ 15)).
¶ 56. Although the cases mentioned above have not been overruled, more recent cases have consistently restated the requirement that the amount claimed be liquidated before prejudgment interest is allowed. In re Estate of Gillies, 830 So.2d 640, 647(¶ 25) (Miss.2002) (holding that "[i]n the case sub judice, there was a bona fide dispute as to whether Gillis was entitled to a quantum meruit award, and if so, the amount. As such, the claim was not liquidated, . . . thus, an award of prejudgment interest was not warranted."); U.S. Fidelity & Guar. Co. v. Estate of Francis ex rel. Francis, 825 So.2d 38, 49-50 (¶ 36-37) (Miss.2002) (finding that "[p]rejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or when the denial of a claim is frivolous or in bad faith. No award of prejudgment interest is allowed where the principal amount has not been fixed prior to judgment. . . . The damages suffered by Francis/Draper were in dispute and unliquidated. . . . It was error for the trial court to award prejudgment interest."); Hancock Bank v. Ensenat, 819 So.2d 3, 15(¶ 58) (Miss.Ct.App.2001) (noting that "prejudgment interest . . . requires that damages be liquidated and that a request appear in the complaint") (citing Warwick v. Matheney, 603 So.2d 330, 342 (Miss.1992); Miss.Code Ann. § 75-17-1(1) (Rev.2000)); Estate of Baxter v. Shaw Associates, Inc., 797 So.2d 396, 403 (¶ 31-32) (Miss.Ct.App.2001) (holding that "[p]rejudgment interest is allowed only when there has been a bad faith denial of a payment or when the amount due has been liquidated" (citing Preferred Risk Mutual Ins. Co. v. Johnson, 730 So.2d 574, 577 (Miss.1998))) and that "[i]nterest may be denied if `there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor.'" (quoting Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997)).
¶ 57. Moeller v. American Guarantee and Liability Ins. Co., 812 So.2d 953, 958(¶ 11) (Miss.2002) quotes the exact same language as the U.S. Fidelity case cited above. The Moeller court also discusses the difference between liquidated and unliquidated claims:
Damages being `liquidated' refers to damages that are set or determined by a contract when a breach occurs. Black's Law Dictionary 395 (7th ed.1999). `Unliquidated' damages are `[d]amages that *1207 have been established by a verdict or award but cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury.' Id. at 397.
Moeller, 812 So.2d at 959-60(¶ 18).
¶ 58. Our review of the record indicates that the claim here was unliquidated, because, although the agreement was for something close to a definite formula for figuring the cost of the work ("cost-plus"), the record reflects a legitimate dispute about whether the amount was owed and if so, how much was owed. The record also reflects clearly that the total price was not set by the contract, nor was an amount of damages for breach specified in the contract. In addition, the record shows that the final amount owed was changed as late as the day before the jury rendered its verdict.
¶ 59. We find that this claim was not "liquidated" as the courts have defined that term, because it was in dispute and uncertain prior to the judgment; and this case does not present facts sufficient to trigger any possible exception to the liquidated amount requirement. In addition, we find that any exception to the general requirement that may have been created by Preferred Risk Mut. Ins. Co. v. Johnson, 730 So.2d 574, 578(¶ 15) (Miss.1998) should not apply in this case. The first possible ground for awarding prejudgment interest, therefore, is lacking.

(2) Bad faith refusal to pay
¶ 60. If there is no liquidated amount due, then prejudgment interest may be awarded for a bad faith or frivolous refusal to pay an amount owed. The cases cited above do not define "bad faith" or "frivolous;" instead, the cases simply assert that there was or was not bad faith based upon the record. Thus, "bad faith" does not appear to have a specialized meaning in this context, but a workable definition has been provided by the court in other contexts: "`bad faith' implies some conscious wrongdoing `because of dishonest purpose or moral obliquity.' Bailey v. Bailey, 724 So.2d 335, 338 (Miss.1998)." Lippincott v. Mississippi Bureau Of Narcotics, 856 So.2d 465, 468(¶ 8) (Miss.Ct.App.2003).
¶ 61. For Mattina's actions to be in bad faith, under the basic definition given above, he would have had to concede that he owed the amount stated and yet refuse to pay without any justification. However, Mattina did not concede that he owed the money; rather, Mattina's actions/words reflect a heated dispute over the final amount, or whether Mattina owed that amount for the work. The jury found that Mattina was incorrect in concluding that the bill was too high, but the jury's verdict does not necessarily make Mattina's actions in bad faith. We find that Mattina's refusal to pay, although stated in less than polite terms, did not rise to the level of bad faith.
¶ 62. Thus, we find that the claim was not liquidated, that is, a genuine dispute existed over the amount due, and Punzo himself changed the total amount due at more than one point during the trial. There was no bad faith, that is, Mattina's dispute over the cost was apparently genuine, even though the jury ultimately found for Punzo. Therefore, the trial court abused its discretion in awarding prejudgment interest. We reverse the award of prejudgment interest, and render judgment in favor of Mattina on that issue.

VII. DID THE TRIAL COURT ERR IN NOT GRANTING A REDUCTION IN THE AMOUNT OF THE DAMAGES AWARD?
¶ 63. Mattina also argues that the jury award should have been reduced from *1208 $94,166.99 to $88,743.48. While this argument appears to be in the nature of a claim for remittitur, the reasons given by Mattina in support of this issue relate to whether or not he had notice of the actual amount owed. Punzo argues that Mattina failed to cite to any authorities in support of granting a reduction in the award, and Punzo argues further that the only authority cited by Mattina is inapposite.

STANDARD OF REVIEW
¶ 64. We review the denial of a request for remittitur for abuse of discretion. Ross-King-Walker, Inc. v. Henson, 672 So.2d 1188, 1193 (Miss.1996). Expanding upon this, we have noted:
Our supreme court has also held that jury awards are not merely advisory and will not under the general rule be set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous. Wallace v. Thornton, 672 So.2d 724, 729 (Miss.1996).
Stringer v. Crowson, 797 So.2d 368, 370(¶ 5) (Miss.Ct.App.2001).

DISCUSSION
¶ 65. Mattina does not argue any of the above listed elements for granting a remittitur. Instead, he makes a rather strained due process argument based upon lack of notice of the amount owed. In support of this argument, Mattina points out that the jury award amounted to more than the original bill submitted by Punzo. Because of this difference in figures, Mattina argues that he was not on notice of the actual amount due. He then cites the case of Reichert v. Reichert, 807 So.2d 1282, 1287(¶ 17) (Miss.Ct.App.2002).
¶ 66. The citation to Reichert as authority for an argument to reduce a jury award is puzzling, to say the least. Reichert does make mention of due process requirements in the section cited by Mattina; however, those requirements are discussed in the context of a domestic relations matter in which the sufficiency or validity of service of process was contested. Id. The Reichert case has nothing to do with any notice requirement in regards to pleading an amount of damages and the effect a jury award different from the pled amount of damages may have on the validity of the amount awarded. Rather, Reichert dealt with, primarily, the requirements of a Rule 81 summons and the validity of a judgment rendered in the absence of proper service of a Rule 81 summons. Thus, the only authority cited by Mattina in support of this issue is inapplicable to the facts of this case.
¶ 67. Given that Mattina cites to only one authority of dubious relevance, we find this issue to be unsupported by any relevant authority. We have consistently held that unsupported assertions on appeal do not have to be considered by this court. Byrom v. State, 863 So.2d 836, 862 (¶ 84) (Miss.2003) (quoting Simmons v. State, 805 So.2d 452, 487 (¶ 90) (Miss. 2001)); Jones v. State, 481 So.2d 798, 804 (Miss.1985) (citations omitted). Since Mattina cites us to no relevant authority in support of his contention that the jury's award should have been reduced, we need not consider this issue. The trial court's decision not to reduce the amount of the jury award is, therefore, affirmed.

VIII. DID THE TRIAL COURT ERR IN EXCLUDING EVIDENCE OF A CHECK ALLEGEDLY OFFERED BY MATTINA TO SETTLE THE CASE?
¶ 68. Finally, Mattina asserts that the trial court erred in excluding evidence of a check allegedly offered to settle the case, because the check or evidence of the check was offered for a limited purpose that did not violate Rule 408 of the Mississippi *1209 Rules of Evidence. Punzo argues that pursuant to Rule 408 the check should not have been admitted. Punzo also argues that the check was not produced in discovery or at least should not have been allowed to be produced so late in the proceedings.

STANDARD OF REVIEW
¶ 69. We review the admission or exclusion of evidence for abuse of discretion. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss.2002); Tatum v. Barrentine, 797 So.2d 223, 230 (¶ 29) (Miss.2001).

DISCUSSION
¶ 70. The record shows that Mattina desired to enter the check into evidence or present testimony regarding the check primarily for the limited purpose of showing lack of bad faith. This stated purpose is significant, especially in light of the trial court's decision to award prejudgment interest and attorney's fees due to Mattina's alleged "willful and wanton" refusal to enter into settlement negotiations. Mattina complains, not unreasonably, that it was unfair for the trial judge to exclude Mattina's evidence of an attempt to settle and then to rule that Mattina acted willfully and wantonly in refusing to attempt to settle.
¶ 71. After being confronted with a proffer of evidence, in the form of the $30,000 check, that Mattina did in fact make some attempt to settle, it was inconsistent for the trial court to exclude that evidence and then turn around and rule that Mattina was wilful and wanton for failing to attempt to settle. Regarding Punzo's argument that the document was not produced in discovery or should not have been allowed in evidence after the trial had commenced, Punzo can hardly complain about previously unknown material being introduced or changed late in the course of the trial. The record indicates that Punzo added material to his final bill as late as the day before the trial concluded.
¶ 72. Yet, however mindful we may be of Mattina's argument in this regard, we cannot find that the trial judge abused his discretion in excluding the check and testimony regarding the check, even though it was purportedly offered for the limited purpose of showing absence of bad faith. Rule 408 of the Mississippi Rules of Evidence does not prohibit evidence of settlement negotiations when offered for a limited purpose other than proof of liability or of the invalidity of a claim. While the check may have been offered primarily to negate bad faith on Mattina's part, which would not have violated M.R.E. 408, the admission of the check could have borne upon more substantive issues, such as the alleged invalidity of Punzo's claim, which would have violated of M.R.E. 408. We do not here decide that issue, however. We find only that, based upon such considerations, the trial court did not abuse its discretion in excluding evidence of the $30,000 check.
¶ 73. We note in passing that, having already found merit in Mattina's arguments on the issues of attorney's fees and prejudgment interest, even were we to find that the trial court erred in excluding this check from evidence, the error would be harmless. This would be so because the question of bad faith or lack thereof bore directly upon those two issues only. But as stated above, we find that there was no abuse of discretion in the trial court's decision to exclude evidence of the check.

I. DID THE TRIAL COURT ERR IN FIXING THE DATE FOR CALCULATION OF PREJUDGMENT INTEREST?
¶ 74. Punzo asserts on cross-appeal that the trial court abused its discretion in *1210 fixing the date for calculating the award of prejudgment interest. Mattina's arguments on the award of prejudgment interest were discussed above.

DISCUSSION
¶ 75. Having already found that the award of prejudgment interest, whenever calculated, was improper, we find that this issue is moot.
¶ 76. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY, SECOND JUDICIAL DISTRICT IS REVERSED AND RENDERED AS TO THE ASSESSMENT OF ATTORNEY'S FEES AND PREJUDGMENT INTEREST AND AFFIRMED IN ALL OTHER RESPECTS AS TO DIRECT APPEAL AND CROSS-APPEAL IS MOOT. COSTS OF THIS APPEAL ARE TO BE DIVIDED EQUALLY BETWEEN THE APPELLANTS/CROSS-APPELLEES AND APPELLEE/CROSS-APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.