ASHCRAFT et al. v. BOARD OF SUPERVISORS OF HINDS COUNTY.

In Banc. Sept. 27, 1948.

(36 So. (2d) 820)

Chambers & Trenholm, for appellants.

**Avery & Putnam** and **Geo. J. Schweizer, Jr.,** for appellee.

**Griffith, C. J.**

A majority of the qualified electors residing in the Forest Hill Consolidated School Specified Area in Hinds County presented to the Board of Supervisors of the County a petition praying an order or orders for the issuance of the bonds of the Specified Area for the purposes hereinafter mentioned. The Board by proper order adjudged that the petition was signed by more than a majority of the qualified electors, and in all other respects adjudged all that the statutes required in that behalf and ordered the issuance of the bonds. The petition did not pray for an election and none was ordered, in which connection it may be added that in the argument it was asserted without dispute that the petition was assigned by more than eighty per cent of those qualified to sign it.

Objections had been filed by four of the qualified electors, who appealed from the order of the Board and the orders having been affirmed by the circuit court the four objectors have appealed to this Court.

A preliminary motion has been made to dismiss the appeal which we pretermit and proceed at once to the merits. Two points of objection and two only are argued here by appellants, and the first is that the bonds cannot be validly issued without an election.

The only statute which specifically provides for the creation of a "specified area" is Sec. 4341, Code 1942, and this for counties wherein "all of the territory outside of a municipal separate school district is embraced in a specified consolidated school district and includes

parts of five supervisors' districts.'' In short the speci-
fied areas are for counties wherein what is called the
unit system prevails. Such a county is the county of
Hinds.

The statute further provides that ''such area shall be a
unit for the issuance of bonds and all provisions of this
section and all other provisions of law with reference
to the issuance of payment of bonds . . . and
all other provisions in connection therewith applying to
. . . consolidated school districts shall apply to
such 'specified areas.' ''

Among the other provisions of law with reference
to the issuance of bonds for consolidated school districts
are Secs. 4342 and 6370, Code 1942, which by the pro-
visions quoted in the foregoing paragraph are written
into and become a part of Sec. 4341. Section 4342 deals
with a case wherein the petition is by 20% of the quali-
fied electors, while Sec. 6370 is addressed to a case
where the petition is by a majority. Sec. 6370 reads as
follows: ''On petition of the majority of the qualified
electors residing in any consolidated school district,
the board of supervisors may issue bonds for such con-
solidated school district in the manner provided for
by law, to erect, repair, and equip school buildings,
teachers' homes, school barns, transportation vehicles,
and for purchasing lands for schools; provided, the
bond issue for other purposes on the property of said
school district shall not be included in calculating the
limit on the amount to be issued for the purposes herein
provided, but only such bonds as may be issued for
said district as a separate taxing unit shall be counted
in calculating the limit of the amount, and the pro-
visions of this act shall extend to and include county
line consolidated school districts. The trustees of the
school shall have authority to expend the proceeds of
bonds for the aforesaid purposes and such funds shall
be disbursed on pay certificates issued by the county
superintendent on the order of said trustees.''

Under this section it was expressly held that when a petition, sufficient in all other respects, is presented by a majority of the qualified electors of the consolidated district, no election is necessary. Orange Grove Consol. School Dist., 187 Miss. 373, 193 So. 6. It was argued in that case, as here, that under what is now Section 4342, Code of 1942, an election is mandatory, to which the district replied that if such a construction were adopted then it amounted to striking out from the statutes Sec. 6370 as being "a vain and useless enactment," and it may be added that it would strike from Section 4341, Code 1942, the quoted provisions as the application of all other provisions of law with references to the issuance of bonds for consolidated school districts.

Undoubtedly the cited Sections 4341, 4342 and 6370, Code 1942, are in pari materia and we may here appropriately quote from our cases as follows: "Since these statutes deal with the same subject, there must be applied the well-established rule that statutes in pari materia, although in apparent conflict, should, so far as reasonably possible, be construed in harmony with each other so as to give force and effect to each." Greaves v. Hinds County, 166 Miss. 89, 98, 145 So. 900, 901. "It is a familiar rule of statutory construction that, when several different sections of a Code deal with the same subject-matter, these sections are to be so interpreted that they shall harmonize not only with each other, so that each shall stand with as full effect as possible consistently with the other related sections, but they shall each be made to fit into the general and dominant policy of the particular system of which they are a part." Choctaw County v. Tennison, 161 Miss. 66, 74, 134 So. 900, 901. "In construing statutes, the court looks to the entire legislation upon the subject, and determines the policy of the Legislature from a consideration of all the statutes together." Hollandale Ice Co. v. Board of Sup'rs, 171 Miss. 515, 522, 157 So. 689, 690.

The dominant policy of these statutes is that no such bonds shall be issued without the consent of the majority of the qualified electors. If the proceedings are initiated upon a petition of 20 per cent of the qualified electors, but less than a majority of all, an election will be necessary to determine the will of the majority, but if initiated on the petition of the majority, then, as said in the Orange Grove case, supra [187 Miss. 373, 193 So. 7], "it shall not be necessary to incur the expense and delay in having them repeat at the polls what they have already expressed in their majority petition." We are not authorized to strike Sec. 6370 from the Code as appellants in effect insist but must allow it to stand, and as the present case is within it, appellants' first point is not well taken.

Appellants' second point is that the purposes for which the bonds are sought to be issued are broader than the purposes allowed by statute, and that since the petitioners may not have been willing to the issue unless the additional features were to be taken care of, there is for that reason no valid petition.

Under Section 4341, Code 1942, the authorized purposes are for "constructing school buildings and teachers' homes, and equipping said school buildings and teachers' homes." Under Sec. 6370, Code 1942, the purposes are "to erect, repair, and equip school buildings, teachers' homes . . ." The petition recites that the purposes are "to construct, erect and equip a new school building; to move, relocate, make alterations and additions to the existing principal's residence and to move, relocate, make alterations and additions to the church building located on the school property and now being used as a school building."

Many cases on the point are annotated in 124 A. L. R. pages 883-889 by which it is seen that generally they fall into two classes, (1) those that give a strict construction to the statutes, and (2) those that construe them broadly or liberally. Our state has been aligned with

the latter group by Weston v. Hancock County, 98 Miss. 800, 54 So. 307, wherein it was held that **(Hn 4)** the terms used in such statutes as respects the purposes for which the bonds may be issued are to be construed in their most comprehensive sense, and thus that the statute allowing bonds to be issued for constructing roads included also the maintenance and betterment of roads already in existence. In brief if the purposes to be accomplished are within the purposes specified by the statute they are within the statute. Applying that principle the quoted statutes, or either of them, would comprehend what the petition prayed to be done by the issuance, as to which there is no ambiguity in the petition. We concur in cases such as Cotter v. Joint School Dist. 164 Wis. 13, 158 N. W. 80, and Beauchamp v. Consolidated School Dist., 297 Mo. 64, 247 S. W. 1004.

Appellants' second point is not maintainable and the judgment of the circuit court will be affirmed.

Affirmed.

**Roberds, J.**, dissenting in part.

I am in accord with the majority opinion except that I do not think the bonds in question could be legally issued without an election. This is a "specified area" school district. Secs. 4341 to and including Sec. 4345, Code 1942, prescribe the requirements for the issuance of bonds of such a district and the handling of the proceeds thereof. These sections expressly require an election to issue the bonds. Sec. 4342 authorizes the election to be called when a petition therefor is signed and filed by twenty percent of the qualified electors of the specified district and Sec. 4341 authorizes the supervisors to issue bonds ". . . at any time within four years after date of election authorizing same as the board may deem best."

But it is said that the foregoing express requirements for issuance of bonds are nulified by the following gen-

eral, catch-all, incorporating clause in Sec. 4341 "such area shall be a unit for the issuance of bonds and all provisions of this section and all other provisions of law with reference to the issuance of and payment of bonds and the levy of taxes therefor and all other provisions in connection therewith applying to rural separate school districts or consolidated school districts shall apply to such specified areas.'" Section 6370 authorizes the supervisors to issue bonds of a consolidated school district (not a "specified area" district) without the necessity of an election upon the filing with the Board of Supervisors a petition signed by a majority of the qualified electors of the district. The majority opinion holds that a "specified area" district can do the same thing because of the above quoted incorporating provision in Sec. 4341. I do not think so for these reasons:

1. The catch-all provision says, that "all [other] provisions of this section" shall apply to the issuance of bonds by the "specified area" district. One "other provision" of that section is that the supervisors can issue the bonds "at any time within four years after date of election authorizing same as the board may deem best." Certainly, then, disregarding the fact that the next section(4342) expressly requires an election, the quoted clause incorporates the clause in the same section which authorizes the supervisors to issue the bonds within four years.

2. The incorporating provision is so general, vague and indefinite it would seem impossible, with accuracy, to say just what outside statutes are incorporated into it. It refers to "all other provisions" for issuance of and payment of bonds and levy of taxes for that purpose and "all other provisions in connection therewith." There are "other provisions" in the outside statutes to which these general references could apply, such as method of levying taxes, disbursement of money, etc., other than the necessity, or non-necessity, of an election. Certainly such general, vague terms do not supersede

and nullify an express provision in the same section, and in those following it, requiring an election. By limiting this catch-all provision to the requirements of the statutes to which reference is made do not conflict with the express provisions of the incorporating statutes all the statutes can be reconciled. They cannot be reconciled by permitting general, indefinite, and uncertain reference provisions to nullify express, specific requirements of appellate statutes.

3. It will be noted incorporating section 4341 refers to "rural separate school districts." Now, Sec. 6417, Code 1942, authorizes issuance of separate school district bonds "in the manner provided in the chapter on municipalities." Nowhere and for no purpose does the law authorize municipalities to issue bonds solely on the authority of a petition. They either have the authority by virtue of the statute without prior ascertainment of the will of the electors, or, if such will is required, then it is to be determined by an election. And, it might be added, that so far as my investigation discloses, this is true of all bond-issuing bodies of municipalities, counties and sub-divisions thereof, with the sole exception of consolidated school districts. So that the clause in Sec. 4341 referring to bonds issued by rural separate school districts gives no authority to "specified area" schools to issue bonds on the sole authority of a petition of a majority of the electors.

The majority opinion cites In re Validation Bonds of Orange Grove Consolidated School District, 187 Miss. 373, 193 So. 6. That case is no authority for holding an election unnecessary here. That case dealt with a consolidated district—not a "specified area" district—and the statute expressly authorized the issuance of the bonds without an election upon petition of a majority of the electors, which, as above remarked, is the only instance I have found where such authority could be based alone on such petition.

The majority opinion finds that the dominant policy of the statutes is that no bonds shall be issued without the consent of a majority of the qualified electors. That, no doubt, is correct. But that is not the question here. The question here is the dominant intent as to the method of ascertaining the majority consent. I do not believe the legislature has adopted, or will adopt, as its dominant intent, that the best method of ascertaining the will of the electors is by petition rather than by election. The petition method is too uncertain and dangerous. It is generally known how easily names may be acquired upon petitions. The personal persuasion upon the signers of the one presenting the petition; the interest of the presentor; the realization of the signers, or non-signers, that their position will be known and brought under criticism—these and other elements often make it difficult for persons to refuse to sign petitions. Again, that method is uncertain because it so often happens that signers do not know the full purport and consequences of the petition, as illustrated by the common report of the man who signed a petition for his own death warrant. There is no time or opportunity for calm deliberation on the merits or demerits of the proposition. The Orange Grove case, supra, is a fine illustration of the instability and uncertainty of petitions. There were 161 qualified electors in the Consolidated School District a petition signed by 133 electors was presented the supervisors asking for issuance of bonds of the district. The supervisors so ordered. Proceedings were promptly instituted to have the bonds validated by the chancery court. Within less than two months of the time of signing the petition, 112 of the electors of the district appeared at that validating proceedings and vigorously protested the issuance of the bonds. In other words, in less than two months there was almost a complete reversal of sentiment on the question. The election method is surely more accurate and definite than the petition method in ascertaining the will of the people. Under the election meth-

od publication is made of the amount, interest, maturities, and all details of the bonds proposed to be issued, and other objects for which the proceeds are to be spent. The election is usually some six weeks away. The people have opportunity to calmly weigh and study the merits and demerits of the proposal. They vote in secret. No one need know how any one votes. The personal appeal incident to presenting a petition and the chance of criticism from knowledge of the signing, or non-signing, of the petition, are lacking. The elector is free to vote his will and his deliberate judgment.

It may well be hoped, at least by the writer, that the Legislature will never adopt as its dominant intent the petition-method of burdening the backs of the people with heavy bond issues and taxes.

**McGhee, J.**, concurs in this opinion.