960 So.2d 474 (2006)
Elsie ETHERIDGE, Appellant
v.
HAROLD CASE & COMPANY, INC., a Mississippi Corporation, and Randy Parkman, Appellees.
No. 2004-CA-01678-COA.
Court of Appeals of Mississippi.
August 22, 2006.
Rehearing Denied April 3, 2007.
*477 Alfred L. Felder, McComb, attorney for appellant.
David M. Ott, Hattiesburg, attorney for appellees.
Before KING, C.J., CHANDLER and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Following a collision between Elsie Etheridge and Randy Parkman, Etheridge filed a negligence action against Parkman and his employer, Harold Case & Company, Inc., (the Appellees) in the Walthall County Circuit Court. A trial was held on the issue of liability only. Following a jury verdict in favor of the Appellees, Etheridge filed a motion for JNOV or, in the alternative, for a new trial. The trial court denied Etheridge's motion, and she now appeals. She presents the following assignments of error for this Court's review:
I. The court erred when it ruled that an official traffic-control device warning to "SLOW TO 45" was advisory rather than mandatory to a truck driver approaching an intersection proceeded by a hill and curve.
II. The court erred in excluding Etheridge's animation that demonstrated that no wreck would occur had the truck slowed to forty-five miles per hour when it reached the warning sign.
III. The court erred in refusing Etheridge's instruction No. P-13 which would have allowed the jury to find that an official traffic-control device had lowered the speed to 45 miles per hour in the area where the wreck occurred.
IV. The court erred in granting Appellees' instructions.
V. The court erred in refusing Etheridge's instructions P-16-A and P-17-A explaining habit testimony.
VI. The court erred in allowing into evidence the unsworn out-of-court statement of an allegedly deceased witness.
VII. The court erred in submitting a jury instruction or interrogatory which required the jury to inquire into Etheridge's fault before inquiring into the Appellees' fault.
VIII. The multiple and substantial errors by the trial court support a reversal of this case for a new trial.
¶ 2. Finding only harmless error, we affirm the judgment of the trial court.

*478 FACTS
¶ 3. At 9:00 a.m. on August 21, 1992, Etheridge began a trip from her home in the Sartinville community in Walthall County. Approximately two miles into her journey, Etheridge was traveling on Sartinville Road when she came to an intersection with Mississippi State Highway 27; the intersection was controlled by a stop sign on Sartinville Road. Eight-hundred feet north of the intersection, and beyond a hill, was a yellow double-diamond warning sign. The top diamond indicated that an intersection was ahead, and the bottom diamond told drivers to "SLOW TO 45."[1] As Etheridge approached the intersection from Sartinville Road, Parkman, who was driving an eighteen-wheel truck, also approached the intersection as he traveled south on Highway 27. Etheridge pulled out into the intersection and was struck by Parkman.
¶ 4. There were four known witnesses to the accident: Etheridge, Parkman, Zebedee Brister, and J.P. Baylis. Brister and Baylis were both at the pumps of a gas station, which was located at the Startinville Road/Highway 27 intersection. Officer Tim Leggett of the Mississippi Highway Patrol investigated the accident and wrote an accident report.
¶ 5. On October 20, 1995, Etheridge filed suit against the Appellees in Walthall County Circuit Court. A jury trial was held to determine the issue of liability only.
¶ 6. During the trial, Etheridge testified through her deposition that, although she did not remember the accident, she always stopped at the stop sign on Sartinville Road. Etheridge's daughter, Peggy Anderson, also testified as to Etheridge's driving habits at the intersection where the accident occurred. She testified that Etheridge frequently drove through the intersection in question, and that Etheridge drove her through the intersection on numerous occasions. Anderson further testified that Etheridge habitually stopped at that intersection and looked both ways before crossing the highway. Anderson also stated that her mother was a very careful driver, and that she had never seen her run the stop sign at that intersection.
¶ 7. Officer Leggett testified that, in his accident report, he attributed no improper driving to Parkman, but that he did note that Etheridge failed to yield to the right of way. Parkman testified that, as he was climbing the hill on Highway 27, he saw a car coming from Sartinville Road and slowed down. According to Parkman, when he realized that the car was not going to stop, he blew his horn, slammed on the brakes, and veered to the right, but could not avoid the collision. Brister was unavailable to testify at the trial (he was more than 150 miles away from the location of the trial), and his deposition was read in court. In the deposition, Brister testified that he saw Etheridge pull out in front of Parkman, and that Parkman was "right on her when she pulled out." Brister specifically testified as follows: "[I] think I saw the truck first then I looked and seen the car, because, I remember me saying oh, she's going to run right out in, ran right out. She had stopped and then she pulled right out and hit him." Baylis died before the trial began and was also unavailable to testify. Because his deposition had never been taken, the trial court allowed statements given by Baylis to be read to the jury. In those statements, Baylis indicated that Parkman was not speeding. He further opined that Etheridge must not have seen Parkman, or she would not have driven into the intersection when she did.
*479 ¶ 8. Both parties presented expert testimony during the trial. Etheridge's expert witness admitted that the accident may have occurred even if Parkman had been driving forty-five miles per hour when he saw Etheridge pull into the intersection. The Appellees' expert witness, Al Gonzales, similarly testified that if Parkman had been driving forty-five miles per hour at the point of perception the accident still would have occurred.
¶ 9. On June 24, 2004, the jury returned a verdict in favor of the Appellees, finding that Etheridge's negligence was the sole and proximate cause of her injuries. On July 7, 2004, Etheridge filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. The trial court entered an order denying Etheridge's motion on August 4, 2004. Aggrieved, Etheridge appeals.

ISSUES AND ANALYSIS
I. The court erred when it ruled that an official traffic-control device warning to "SLOW TO 45" was advisory rather than mandatory to a truck driver approaching an intersection proceeded by a hill and curve.
¶ 10. Citing Mississippi Code Annotated sections 63-3-133 (Rev.2004) and 63-3-313 (Rev.2004), Etheridge contends that Parkman was required to obey the traffic-control device on Highway 27. Mississippi Code Annotated section 63-3-133 defines "official traffic-control devices" as "all signs, signals, markings, and devices not inconsistent with this chapter placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic." Pursuant to Mississippi Code Annotated section 63-3-313, "no driver of a vehicle shall disobey the instructions of any official traffic-control device placed in accordance with the provisions of this chapter, unless at the time otherwise directed by a police officer." The traffic control device at issue is a yellow double-diamond sign with a black cross on the top diamond, indicating that an intersection is ahead, and black writing on the bottom diamond instructing drivers to "SLOW TO 45."
¶ 11. In Harrison v. State, 800 So.2d 1134, 1137(¶ 14) (Miss.2001), the court determined that drivers have a general duty to obey all official traffic-control devices, pursuant to Mississippi Code Annotated sections 63-3-133 and 63-3-313. The court further determined that specific statutory provisions, such as the provision governing speed through construction zones, controlled over this general duty. The specific statutory provision at issue in Harrison was Mississippi Code Annotated section 63-3-516(1) (Rev.2004), which provides in part:
It is unlawful for any person to operate a motor vehicle within a highway work zone at a speed in excess of the maximum speed limit specifically established for the zone whenever workers are present and whenever the zone is indicated by appropriately placed signs displaying the reduced maximum speed limit.
¶ 12. In determining that specific statutory provisions control over general provisions, the Harrison court addressed statutory construction, noting the well-established principle that "when a statute is plain and unambiguous there is no room for construction." Id. at 1137(¶ 12) (citing Kerr-McGee Chem. Corp. v. Buelow, 670 So.2d 12, 17 (Miss.1995)). The court further expressed that "only when a statute is unclear . . . should we look beyond the language of the statute in determining the Legislature's intent." Id.
*480 ¶ 13. In the case sub judice, the trial court initially ruled that the traffic-control device was mandatory, however, it later reversed its ruling. The trial court determined that the traffic-control device was advisory, rather than mandatory, based on the following: (1) it would be "ridiculous" to hold a driver to the standard set out in Harrison, as Harrison had not been decided when the accident in this case occurred; (2) the double-diamond sign is not a speed limit sign according to the Manual of Uniform Traffic Control Devices; (3) the Mississippi Supreme Court had no intention of changing traffic laws when it ruled on the search and seizure issue in Harrison.[2]
¶ 14. We find that Harrison did not set out a new standard for care for drivers, or change traffic laws. Instead, it reaffirmed the well-established principle that a court should not look beyond the language of a plain and unambiguous statute to determine legislative intent. Even though the double-diamond sign in question is not a speed-limit sign according to the Manual of Uniform Traffic Control Devices, it is an official traffic-control device according to the plain and unambiguous language of Mississippi Code Annotated section 63-3-133. Furthermore, according to the plain and unambiguous language of Mississippi Code Annotated section 63-3-313, drivers must obey all traffic-control devices, unless instructed otherwise by a police officer. Therefore, we find that the trial court erred in ruling that the double-diamond sign was advisory rather than mandatory. We further find, however, that this error is harmless.
¶ 15. The trial court determined that Etheridge was negligent as a matter of law for failing to yield to an immediate hazard. The Appellees' expert witness, Al Gonzales, testified that the accident would have occurred even if Parkman had been traveling forty-five miles per hour at the point of perception. He also testified that Etheridge's negligence was the sole proximate cause of the accident. Most notably, Etheridge's expert witness, Steve Irwin, admitted that the accident may have occurred even if Parkman had been driving forty-five miles per hour. Irwin further admitted that Etheridge was at fault for pulling out in front of Parkman. Moreover, all of the witnesses to the accident, except for Etheridge, who has no memory of the accident, stated that Etheridge pulled out into the intersection at a point when Parkman was too close to avoid the accident. Thus, the weight of the evidence lends to the conclusion that Parkman's speed did not cause the accident. Therefore, the trial court's error in ruling that the double-diamond sign was advisory is harmless.
II. The court erred in excluding Etheridge's animation that demonstrated that no wreck would occur had the truck slowed to forty-five miles per hour when it reached the warning sign.
¶ 16. A trial court must employ a two-prong inquiry in determining the admissibility of expert testimony. Sports Page Inc. v. Punzo, 900 So.2d 1193, 1200-01(¶ 26) (Miss.Ct.App.2004) (citing Mississippi *481 Transp. Comm'n v. McLemore, 863 So.2d 31, 39(¶ 22) (Miss.2003)). First, the trial court must determine whether the expert testimony is relevant, i.e., whether it will "assist the trier of fact." Sports Page Inc., 900 So.2d at 1201(¶ 26) (quoting Mathis v. Exxon Corp., 302 F.3d 448, 460 (5th Cir.2002)). The trial court then must determine whether the expert testimony is reliable. Id. (citing Mississippi Transp. Comm'n, 863 So.2d at 38(¶ 16)). "The admission of expert testimony is controlled by the trial judge's discretion. This Court will not disturb the decision of a trial judge absent clear abuse of that discretion." Daughtry v. Kuiper, 852 So.2d 675, 679(¶ 19) (Miss.Ct.App.2003) (quoting Stanton v. Delta Regional Med. Ctr., 802 So.2d 142, 144(¶ 4) (Miss.Ct.App.2001)).
¶ 17. During trial, Etheridge sought to introduce an animation showing that, if Parkman had been going forty-five miles per hour at the point of the warning sign, i.e., before the intersection was in sight, Etheridge would have crossed the intersection before Parkman arrived. The trial court sustained the Appellees' objection to the animation, stating that it was more prejudicial than probative under Rule 403 of the Mississippi Rules of Evidence. The court reasoned that whether Parkman was going forty-five miles per hour 800 feet before he could have seen Etheridge was irrelevant.
¶ 18. We agree with the trial court that the animation was irrelevant. Etheridge's expert witness testified that the accident may have occurred even if Parkman had been driving forty-five miles per hour when he saw Etheridge pull into the intersection. Furthermore, the Appellees' expert witness, Al Gonzales, also testified that if Parkman had been driving fortyfive miles per hour at the point of perception the accident still would have occurred. Moreover, whether Parkman was going forty-five miles per hour before he could see anyone in the intersection, and before anyone in the intersection could see him, is no more relevant to the cause of the accident than whether Parkman rolled through a stop sign five miles north of the intersection. Consequently, we find that the trial court did not abuse its discretion in excluding the animation of Etheridge's expert. This assignment of error is without merit.
III. The court erred in refusing Etheridge's instruction No. P-13 which would have allowed the jury to find that an official traffic-control device had lowered the speed to forty-five miles per hour in the area where the wreck occurred.
¶ 19. In determining whether a trial court erred in granting or denying jury instructions, no instruction should be read in isolation. Burr v. Mississippi Baptist Medical Center, 909 So.2d 721, 726(¶ 12) (Miss.2005). This Court reads all of the jury instructions together as a whole. Id. When read as a whole, no reversible error will be found if the jury instructions fairly announce the law of the case and create no injustice. Entergy Mississippi, Inc. v. Bolden, 854 So.2d 1051, 1063(¶ 35) (Miss.2003) (quoting Reese v. Summers, 792 So.2d 992, 994(¶ 4) (Miss. 2001)). A party is entitled to have his theory of the case presented to the jury through instructions if there is adequate evidence to support it, but only "if made conditional upon the jury's findings that such facts existed." Reese, 792 So.2d at 994(¶ 4) (quoting Murphy v. Burney, 27 So.2d 773, 774 (Miss.1946)). If a proposed jury instruction repeats a theory fairly covered in another instruction, incorrectly states the law, or is without adequate foundation in the evidence of the case, a trial *482 court may properly refuse to grant the instruction. Burr, 909 So.2d at 726(¶ 12).
¶ 20. Requested jury instruction P-13 recited the language from Mississippi Code Annotated sections 63-3-133 and 63-3-313, and read as follows:
If you find from a preponderance of the evidence that an official traffic-control device had been placed at the intersection where this wreck occurred, and if you further find from a preponderance of the evidence that the defendant truck driver Randy Parkman did not obey the instructions of the official traffic-control device by reducing his speed to 45 miles per hour or below, then you are instructed that the defendant is negligent as a matter of law. If you find that such negligence was a proximate contributing cause of the wreck and injuries to the plaintiff, then your verdict shall be for the plaintiff.
Parkman testified that he did not decrease his speed to forty-five miles per hour upon reaching the sign on Highway 27. Because we have determined that Parkman was required to obey the instruction of the traffic control device to "SLOW TO 45," there was sufficient evidence to support submission of Etheridge's theory of the case to the jury through instructions. Furthermore, the requested jury instruction, P-13, was conditional upon the jury's finding that Parkman's negligence was a proximate and contributing cause of the accident. If requested jury instruction P-13 had been granted, the jury would have been at liberty to find that Parkman's negligence did not contribute to the accident. Therefore, we find that the trial court erred in refusing to grant this instruction. Nevertheless, due to the weight of the evidence as discussed under the first assignment of error, we also find that this error is harmless.
IV. The court erred in granting Appellees' instructions.
¶ 21. Etheridge asserts that the trial court erred in granting the Appellees' jury instructions, labeled instruction No. 14, 21, and 23. Jury instruction No. 14 read as follows:
The Court instructs you that under the law of the State of Mississippi, Elsie M. Etheridge was negligent when she failed to yield the right of way to an approaching vehicle that was so close as to present an immediate hazard. Therefore, you must find that she was negligent. Further, under the law of the State of Mississippi, if a Plaintiff is the sole proximate cause of her own injuries, the Plaintiff may not recover from another for those injuries. Therefore, [i]f you find that the negligence of the Plaintiff, Elsie Etheridge, was the sole proximate cause of the accident, then you must find for the Defendants, Randy Parkman and Harold Case & Co.
Jury instruction No. 21 informed jurors that "under the laws of the State of Mississippi . . . Etheridge was negligent as a matter of law when she failed to yield the right of way to an approaching vehicle driven by Randy Parkman that was so close as to present an immediate hazard." It further instructed the jurors that they "must find that [Etheridge] was negligent." Jury instruction No. 23 was a form to be filled out by each juror, as a means of returning their verdict. The form asked the jurors to state whether Etheridge was negligent, the percentage of fault for which Etheridge was responsible, and whether Parkman was guilty of negligence which was a proximate contributing cause of Etheridge's damages. If the juror found Parkman to be negligent, the form also asked that juror assign a percentage of fault to Parkman.
*483 ¶ 22. Etheridge asserts that these jury instructions were tantamount to a directed verdict in favor of the Appellees. Etheridge further asserts that the evidence was sufficient to present a question for the jury as to whether an immediate hazard existed because there was conflicting testimony as to whether she stopped at the stop sign, looked both ways, and saw no vehicle coming. In support of this argument, Etheridge cites the habit testimony that she always stopped at the intersection and the testimony of Baylis that she stopped at the stop sign before the accident.
¶ 23. The standard of review for whether a peremptory instruction should be granted is the same as the standard for a directed verdict. Entergy Mississippi, Inc. v. Bolden, 854 So.2d 1051, 1054(¶ 7) (Miss.2003) (citing Herrington v. Spell, 692 So.2d 93, 97 (Miss.1997) (overruled on other grounds)). In determining whether to grant a peremptory instruction, the evidence should be viewed in the light most favorable to the opposing party, "giving the benefit of all the favorable inferences that may be reasonably drawn from the evidence, and considering any uncontradicted evidence offered by the moving party." Pickering v. Industria Masina I Traktora (IMT), 740 So.2d 836, 842-43(¶ 23) (Miss.1999) (citing Turner v. Turner, 524 So.2d 942, 944 (Miss.1988)). If substantial evidence supports the verdict, so that reasonable and fair-minded jurors might have reached different conclusions, then we will not reverse. Reese, 792 So.2d at 996(¶ 8) (citing Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997)).
¶ 24. Although Etheridge's habit testimony supports the notion that she stopped at the stop sign on the day in question, and Brister testified that stopped at the stop sign, this evidence does not support the argument that Etheridge was not negligent. Mississippi Code Annotated section 63-3-805 (Rev.2004) states in part that "[t]he driver of a vehicle shall . . . stop in obedience to a stop sign . . . at an intersection where a stop sign is erected . . . and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard." All of the witnesses to the accident, except for Etheridge, who has no memory of the accident, stated that Etheridge pulled out into the intersection at a point when Parkman was too close to avoid the accident. Moreover, Etheridge's expert witness testified that Etheridge was at fault for pulling out in front of Parkman, and the Appellees' expert testified that Etheridge's negligence was the sole proximate cause of the accident. Consequently, we find that substantial evidence supports the verdict that Etheridge was negligent for disregarding an immediate hazard. This issue is without merit.
V. The court erred in refusing Etheridge's instructions P-16-A and P-17-A explaining habit testimony.
¶ 25. During trial, Etheridge and her daughter, Peggy Anderson, testified as to Etheridge's driving habits at the intersection where the accident occurred. Anderson testified that Etheridge frequently drove through the intersection in question, and that Etheridge drove her through the intersection dozens of times over a period of years. Anderson further testified that Etheridge habitually stopped at that intersection and looked both ways before crossing the highway. Anderson also stated that her mother was a very careful driver, and that she had never seen her run the stop sign at that intersection. Through her deposition, Etheridge testified that, although she could not remember the accident, she always stopped at the stop sign on Sartinville Road. Etheridge *484 asserts that the trial court erroneously prevented her from presenting her theory of the case when it refused to give the jury her requested instructions on habit testimony, labeled P-16-A and P-17-A.
¶ 26. Requested jury instruction P-16-A read as follows:
The Court instructs the jury that evidence of the habit of a person is relevant to prove the conduct of the person on a particular occasion was in conformity with the habit. If you believe from the evidence, if any, that Elsie Etheridge had established a habit of coming to a stop at the stop sign at the intersection of the collision, then you can imply that she probably acted in this instance of the collision in conformity with her habit.
Requested jury instruction P-17-A read as follows: "the Court instructs the jury that evidence of the habit of a person is relevant to prove the conduct of the person on a particular occasion was in conformity with the habit." The trial court determined that to grant the requested instructions on habit testimony would be an improper comment on the evidence. We agree.
¶ 27. As previously stated, a party is entitled to have his theory of the case presented to the jury through instructions, if there is adequate evidence to support it. Reese, 792 So.2d at 994(¶ 4) (citing Murphy v. Burney, 27 So.2d 773, 774 (Miss. 1946)); see also PACCAR Financial Corp. v. Howard, 615 So.2d 583, 590 (Miss.1993). Nonetheless, "[i]t is also well established that instructions to the jury should not single out or contain comments on specific evidence." Crimm v. State, 888 So.2d 1178, 1186(¶ 35) (Miss.Ct.App.2004) (quoting Lester v. State, 744 So.2d 757, 759(¶ 6) (Miss.1999)). Accordingly, we find that the trial court did not abuse its discretion in refusing to grant jury instructions that inappropriately commented on the evidence. This issue is without merit.
VI. The court erred in allowing into evidence the unsworn out-of-court statement of an allegedly deceased witness.
¶ 28. In the case sub judice, Baylis, a witnesses to the accident, gave statements to each of the parties. One statement was given in 1993, and another was given in 1996. Shortly before the trial began, the Appellees learned that Baylis had died. The night before trial, the Appellees notified Etheridge that they intended to use a statement given by Baylis to Etheridge's investigator. Over Etheridge's objections, the trial court allowed the statement to be read into evidence.
¶ 29. Rule 804(b)(5) of the Mississippi Rules of Evidence, dealing with hearsay exceptions when a declarant is unavailable, provides in part that an out-of-court statement "not specifically covered by any of the foregoing exceptions [to the hearsay rule] but having equivalent circumstantial guarantees of trustworthiness" may be admitted:
[I]f the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it.
*485 Thus, in order to be properly admitted under the residual exceptions to the hearsay rule, an out-of-court statement must be tested for trustworthiness, materiality, probative value, the interests of justice, and notice. Moore v. State, 822 So.2d 1100, 1108(¶ 24) (Miss.Ct.App.2002) (citing Quimby v. State, 604 So.2d 741, 747 (Miss. 1992)).
¶ 30. Etheridge asserts that the trial court failed to determine whether the statement contained circumstantial guarantees of trustworthiness, whether it was offered as evidence of a material fact, or whether it was more probative to the point for which it was being offered than the Appellees could procure through reasonable efforts. Consequently, Etheridge argues that the trial court erred in admitting Baylis's statement because it did not find that the statement met the requirements of Rule 804(b)(5). We disagree.
¶ 31. The trial court determined that Baylis was clearly unavailable, pursuant to Rule 804(a)(4), because he was deceased. The court determined that the Appellees should have given longer notice of their intent to use the statement. Nonetheless, it determined that the notice given was sufficient because Etheridge actually took the statement and had been in possession of it for several years. The court also noted that the statement given to Etheridge was consistent with the statement Baylis gave to the Appellees. Because the statement given in 1993 was consistent with the statement given in 1996, the trial court determined that the statements contained "significant indicia of reliability." Finally, the trial court held that the Mississippi Rules of Evidence favor admission of the statement over exclusion.
¶ 32. Although the trial court did not recite the language "circumstantial guarantees of trustworthiness" in its ruling, it did find that the statement contained "significant indicia of reliability." Thus, the trial court clearly tested the statement for its trustworthiness. Moreover, the trial court read into the record Rule 804(b)(5) in its entirety and specifically found that the statement fell within the rule. Thus, even though the trial court did not use language such as "I find that this statement is offered as evidence of a material fact," or "this statement is more probative to the point for which it was being offered than the Appellees could procure through reasonable efforts," it plainly determined that the statement met the requirements of Rule 804(b)(5). Therefore, this issue is without merit.
VII. The court erred in submitting a jury instruction or interrogatory which required the jury to inquire into Etheridge's fault before inquiring into the Appellees' fault.
¶ 33. Under this assignment of error, Etheridge again addresses jury instruction No. 23, which asked the jurors to answer four questions. The first question asked whether Etheridge was negligent, and the second question asked the juror to assign Etheridge a percentage of fault. The third and fourth questions inquired into Parkman's negligence and corresponding percentage of fault. Finally, the form instructed the jurors that both percentages must equal one-hundred percent.
¶ 34. As we have previously stated, this Court reads all of the jury instructions together as a whole to determine whether the instructions fairly announce the law of the case and create no injustice. Burr, 909 So.2d at 726(¶ 12) (citing Entergy Mississippi, Inc., 854 So.2d at 1063(¶ 35)). Etheridge's negligence was established by jury instruction No. 14 and 21, which instructed the jury to find that Etheridge was negligent as a matter of law for failing *486 to yield to an immediate hazard. Furthermore, we determined that instruction No. 14 and 21 were supported by substantial evidence. Thus, when reading the jury instructions together as a whole, it is clear that the instructions adequately and fairly announced the law of the case and created no injustice. Therefore, this assignment of error is without merit.
VIII. The multiple and substantial errors by the trial court support a reversal of this case for a new trial.
¶ 35. Although we determine that the trial court erred under the first and third issues presented, we find that both of the errors were harmless. Thus, we find that the combination of the two errors does not merit reversal.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF WALTHALL COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., CHANDLER, GRIFFIS, BARNES, AND ROBERTS, JJ., CONCUR. SOUTHWICK, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS AND BARNES, JJ. LEE, P.J., JOINS IN PART. IRVING, J., CONCURS IN RESULT ONLY. LEE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
SOUTHWICK, J., concurring.
¶ 37. I concur. My opinion addresses a precedent that bedeviled the lower court and which the majority also must discuss. Harrison v. State, 800 So.2d 1134 (Miss. 2001). In my respectful view, that precedent should be overruled by the Supreme Court. I believe both that it was wrongly decided and, as the present case demonstrates, its reasoning encourages mischievous legal arguments.[3]
¶ 38. In that precedent, the defendant had been driving at about 67 mile per hour on an interstate highway in which 70 miles per hour was the usual speed limit. Harrison, 800 So.2d at 1135. He was stopped while traveling through a work zone with a posted speed limit of 60 miles per hour. The court held that the posted signs notifying travelers of a speed limit in a construction zone did not create a duty to drive at that speed unless there were workers present. Id. at 1138. That was because a statute created a specific penalty for speeding in construction zones only when workers were present. Id., citing Miss.Code Ann. § 63-3-516(1) (2000). Therefore, though the only traffic signs regarding speed limits in this location indicated that 60 miles per hour was the maximum, the absence of construction workers meant the posted limit was not the enforceable limit.
¶ 39. The Court of Appeals had found that the issue was not the applicable penalty but was instead the applicable speed limit. The Supreme Court held that not only did the absence of workers eliminate the specific penalty, the Supreme Court held that the absence of workers eliminated "the construction speed limit" itself. Harrison, 800 So.2d at 1138.
¶ 40. Among the problems with the Supreme Court's approach is its use of elements of criminal offenses to cancel agency regulatory actions. The legislature may *487 not delegate to administrative agencies the authority to define crimes. State v. Russell, 358 So.2d 409, 411 (Miss.1978). What may be and was validly relinquished to an agency was the making of rules for the control of traffic on highways. Miss.Code Ann. 65-1-8(c) (Rev.2005). Harrison effectively held that a criminal statute rescinded this delegation to the extent of setting speed limits in unoccupied work zones. It appears more accurate to conclude that the statute simply provided a new penalty for one category of rule violations but did not take back from the agency its right to set all work zone speed limits. If the Department of Transportation wants to set different speed limits for occupied and unoccupied zones, as opposed to the legislature's setting different penalties for violations, the authority exists and its exercise would be reflected by traffic control signs so stating.
¶ 41. Even if criminal statutes are relevant, the most specific criminal statute does not displace other statutes penalizing the same conduct. Instead, when multiple statutes would apply, it is for a prosecutor to choose under which to charge, a choice not subject to objection by the accused. Beckham v. State, 556 So.2d 342, 343 (Miss.1990). The Harrison opinion did not refer to precedents regarding criminal statutes but instead to general principles of statutory construction dealing with inconsistent statutes. Harrison, 800 So.2d at 1139. As I will discuss, though, there is nothing inconsistent about a specific work zone speed limit statute when workers are present and other statutes criminalizing speeding  including in work zones when workers are absent.
¶ 42. The difficulties with an analysis such as was later used by the Supreme Court were discussed in the Court of Appeals' Harrison opinion, excerpts of which now follow.
Harrison must be arguing that not only was Section 63-3-516 not violated, but also that the speed limit at this location was 70 miles per hour. That means that what was posted as the speed limit was not actually the speed limit. To the contrary, a traffic violation occurs whenever anyone disobeys "the instructions of an official traffic-control device" placed along the road. Miss. Code Ann. § 63-3-313 (Rev.1996). Another section defines a "traffic control device" as "all signs . . . placed or erected . . . for the purpose of regulating, warning, or guiding traffic." Miss.Code Ann. § 63-3-133(a) (Rev.1996); see Niles v. Sanders, 218 So.2d 428 (Miss. 1969) (exceeding a municipality-posted speed limit is a violation of a "traffic control device" under section 63-3-305). Therefore a speed-limit sign would be a "traffic-control device," whose "instruction" must be followed. . . .
. . . .
One final relevant statute allows the Transportation Commission to adopt "rules, regulations and ordinances for the control of and the policing of the traffic on the state highways," the violation of which constitutes a misdemeanor. Miss.Code Ann. § 65-1-8(c) (Supp.1999). This delegation of general regulatory authority is understandable, indeed indispensable unless the legislature must enact every highway traffic rule.
One statute requires warning signs to be obeyed; another statute allows special rules to be created for construction zones and for "explicit instructions" regarding them to be posted [Miss.Code Ann. § 65-1-71 (Rev.1991)]; still another provides for general traffic rules to be adopted. Here, the warning signs posted day and night provided for a 60 mile per hour speed limit. The presumption is that the direction given by *488 these signs, namely, that a continuous lower speed limit existed, properly expressed controlling traffic regulations. . . . .
To hold that section 63-3-516 is the only applicable statute, the rule that specific statutes control over general ones might be invoked. However, we hold that the specific statute does not apply. There is no rule of statutory construction that an inapplicable statute ever controls over an applicable one. There is a general speeding statute  one must obey posted speed limits. There is a specific statute that sets a $250 fine when a driver speeds in a work zone and workers are present. The "occupied work zone" speeding statute did not apply so the general one does. There simply is no specific over general issue.
The point could be altered into an argument that the specific statute is the exclusive one controlling work zone speeding. However, the statute does not state that "it is unlawful to exceed the posted work zone speed limits only if workers are present. . . ." When the specific offense occurs, the specific penalty applies. Before the 1997 statute [section 63-3-516] created a new penalty for some work zone speeding, the general prohibition of ignoring traffic signs would have applied.
The 1997 statute only partly covered all the speeding that could occur in a construction zone. To make it go further than its precise wording would result in a repeal by implication of the general speeding statutes' coverage as to the remainder. Few rules of construction are better established than that repeals by implication are disfavored. Associated Press v. Bost, 656 So.2d 113, 115 (Miss.1995). Here the repeal would be to exempt conduct that formerly was prohibited. Instead of a repeal, we apply this mandate:
When different code sections deal with the same subject matter, these sections are to be construed and interpreted not only so they harmonize with each other but also where they fit into the general and dominant policy of the particular system of which they are part.

Ashcraft v. Board of Supervisors of Hinds County, 204 Miss. 65, 36 So.2d 820 (1948), quoted in Andrews v. Waste Control, Inc., 409 So.2d 707, 713 (Miss. 1982).
The obvious harmony with the "general and dominant policy" of highway safety regulations is that traffic control signs are to be obeyed. It is not just a policy; it is a statutory command. Miss. Code Ann. § 63-3-313 (Rev.1996). Harrison wants us to conclude that construction speed limits may be ignored when workers are not present. A driver presumably only knows whether a worker is present when he sees one, which means the warning signs will be ignored until that happens. We hope the worker will be seen in time. The higher fine in fact applies whenever a worker is present, whether observed or not. Moreover, hazards exist even when workers are gone, e.g., torn-up pavement; one lane of traffic on an interstate highway; heavy equipment, tools, and barricades in place; bumps, dips, and narrow bridges. It often is simply not safe to proceed at anything near the "normal speed" irrespective of workers. Yet no matter how significant the hazard, how indispensable to safety a driver's slowing might be, Harrison in effect argues that the Transportation Commission is statutorily compelled to permit full speed ahead unless workers are present.
The decision regarding construction zone speeds is for the legislatively empowered *489 agency to make. If lower limits only for the workday are appropriate, that decision can be reflected at day's end by removing the signs or laying them face down. The dominant policy of highway safety calls on the agency and not the motorist to decide when the reasons for the speed limit apply.
Harrison, 1998-CA-01278-COA, 13-21.
¶ 43. The arguments raised in the present litigation reveal the distortions that can arise from a precedent that makes guesswork out of enforcing administrative agency regulations, especially ones for which proper notice has been posted by the agency. The Department of Transportation's traffic control signs are supposed to control traffic. Traditionally, a violation of traffic rules may at times be excused if the driver proves necessity for the violation. Stodghill v. State, 892 So.2d 236, 238 (Miss.2005). Harrison was used by a party in this case to suggest that a violation of traffic rules may at times be excused unless the State proves necessity for the enforcement. Uncertainty naturally flows from a precedent that allows posted regulations to be voided by isolated and extraneous issues. I believe the precedent drove too far the concept of a specific criminal statute's controlling over a general one when it declared a partial repeal of the general.
¶ 44. The continuing existence of the precedent inspires creation of broader error in statutory interpretation and in the authority of administrative agencies. I respectfully suggest that we should turn back from the road that Harrison marked.
GRIFFIS AND BARNES, JJ., JOIN THIS OPINION. LEE, P.J., JOINS THIS OPINION IN PART.
NOTES
[1] The posted speed limit on Highway 27 was fifty-five miles per hour.
[2] Harrison also addressed whether police officers had probable cause to stop the defendant who was going sixty-seven to seventy miles per hour in a sixty mile per hour construction zone when no workers were present. Id. at 1135(¶ 3). The stop led to the officers finding 117 pounds of marijuana in the trunk of the defendant's car. Id. at 1135(¶ 5). The court determined that, although the defendant was not in violation of Mississippi Code Annotated section 63-3-516(1), "the question of probable cause does not turn on an ultimate finding of guilt," but on whether the officer had an objective reasonable basis for believing that a violation had occurred. Id. at 1138-39 (¶ 17, ¶ 21).
[3] Perhaps instead, the only problem is that my perspective is skewed. I wrote the Court of Appeals opinion whose reasoning was rejected even while its result was affirmed by the higher court. Harrison v. State, 1998-CA-01278-COA (Miss.Ct.App. Feb. 8, 2000) (conviction affirmed by equally divided vote), aff'd 800 So.2d 1134 (Miss.2001).